# In the United States Court of Federal Claims

No. 13-247 C

(E-Filed: February 12, 2014)

| | |
|---|---|
| PALAFOX STREET ASSOCIATES, L.P., | ) |
| | ) |
| | ) Motion to Dismiss for Lack of |
| Plaintiff, | ) Jurisdiction, RCFC 12(b)(1); |
| | ) Motion to Dismiss for Failure to |
| v. | ) State a Claim, RCFC 12(b)(6); |
| | ) Contract Disputes Act of 1978; |
| THE UNITED STATES, | ) Election Doctrine; Judicial |
| | ) Estoppel; Res Judicata |
| Defendant. | ) |
| | ) |

Nick R. Hoogstraten, Washington, DC, for plaintiff.

Joshua A. Mandlebaum, Trial Attorney, with whom were Stuart F. Delery, Assistant Attorney General, Bryant G. Snee, Acting Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. John S. Tobey, Assistant General Counsel, Office of General Counsel, United States General Services Administration, Washington, DC, of counsel.

## OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

This case involves a contract dispute between Palafox Street Associates, L.P. (Palafox or plaintiff) and the General Services Administration (GSA, government, or defendant). See Compl., Dkt. No. 1, ¶¶ 1–2, 4. Palafox is the successor in interest to Keating Development Company (Keating) under a lease between Keating and GSA "for the construction and subsequent lease of a federal courthouse" (the Lease). Id. ¶ 3. The parties dispute the interpretation of a tax adjustment clause in the Lease. See id. ¶¶ 7, 19, 22–23.

Currently before the court is the Complaint, filed April 8, 2013; Defendant's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted (defendant's Motion or Def.'s Mot.), Dkt. No. 7, attached to which is an appendix (Def.'s App.), filed July 22, 2013; Plaintiff's Opposition to Defendant's Motion to Dismiss (Pl.'s Resp.), Dkt. No. 12, filed September 23, 2013; and

Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted (Def.'s Reply), Dkt. No. 17, filed October 29, 2013.

For the reasons stated below, defendant's Motion is GRANTED-IN-PART, STAYED-IN-PART, and DENIED-IN-PART.

I.    Background[1]

    A.    The Lease and the Circumstances Giving Rise to the Dispute

On October 3, 1995, Keating and GSA entered into the Lease, under which "Keating agreed to construct the federal courthouse and lease it back to GSA for a term of twenty years beginning June 1, 1997 (later amended to August 1, 1997)." Compl. ¶ 12. The Lease included a tax adjustment clause, which provided that GSA would pay real estate taxes separately from the rent. See id. ¶¶ 6–7. The tax adjustment clause, as amended, states:

> The Government shall make an annual lump sum adjustment, as additional payment to or deduction from, its share of any increase or decrease in real estate taxes that are assessed over the agreed upon base year or negotiated dollar amount . . . .  In accordance with this paragraph, the base year real estate  taxes for purposes of adjustments are hereby established as $250,000.

Def.'s App. A84 ¶ 1.4, A86 ¶ B (the Lease); see also Compl. ¶¶ 7–8. In December of 1996, "Keating assigned its interest under the Lease to Palafox, a special purpose entity with ownership similar to Keating." Compl. ¶ 13. The Bank of New York was subsequently designated the trustee under the Lease. See id. ¶¶ 14, 17.

From August 1997 through December 2011, in addition to paying the monthly rent due under the Lease, GSA also paid Palafox "1/12 of the negotiated $250,000 baseline amount for real estate taxes each month." Id. ¶ 15. In 2011, GSA conducted an audit of the rent and real estate taxes associated with the Lease. See id. ¶ 17; Def.'s Mot. 3. The audit revealed that the real estate taxes actually paid by Palafox each year "were substantially less than the $250,000 amount." Compl. ¶ 17; see id. ¶ 15 (conceding that, from 1997 through 2011, the annual assessed real estate taxes on the property were less than $250,000). On June 8, 2011, the contracting officer sent a letter to the Bank of New York, which stated that the discrepancy between the annual real estate taxes paid by Palafox and the annual $250,000 paid by GSA to Palafox "created an excessive obligation due the government in the amount of $824,416.01." Def.'s App. A1 (June 8, 2011 letter); see also Compl. ¶ 17. The contracting officer requested that the Bank of

---

[1]    The court only provides those facts that are relevant to the briefing currently before the court.

New York conduct its own analysis of the amount owed to the government and respond within thirty days.  Def.'s App. A1 (June 8, 2011 letter).  It is not clear from the record whether the Bank of New York responded to the contracting officer's June 8, 2011 letter.

On September 29, 2011, Keating (on behalf of Palafox) sent a letter to the contracting officer, stating its position that "the $250,000 is an allowance and that [the contracting officer's] analysis of the lease language does not reflect the matter correctly." Def.'s App. A3 (Sept. 29, 2011 letter); see also Compl. ¶ 19.  On October 19, 2011, the contracting officer responded to the September 29, 2011 letter by e-mail.  Def.'s App. A4 (Oct. 19, 2011 e-mail).  The contracting officer responded that GSA would likely withhold from future rental payment the amount allegedly owed to the government ($824,416.01), id. at A5, and, from December 1, 2011 through May 1, 2012, GSA attempted to offset the $824,416.01 by sending the Bank of New York half of the monthly rent payments, Compl. ¶ 20.  However, the Bank of New York refused to accept partial rent payments, the effect of which "was a setoff of six full monthly rent payments" or $831,858.  Id. ¶¶ 20, 25; cf. Def.'s Mot. 4 (conceding that the $831,858 in withheld rental payments is $7,441.99 above the $824,416.01 amount identified by the contracting officer as being owed to the government).

In a letter to the contracting officer dated February 7, 2012, Palafox reiterated its disagreement with the government's position and requested that the parties meet in an "attempt to resolve th[e] matter without great conflict."  Def.'s App. A7 (Feb. 7, 2012 letter); see Compl. ¶ 22.  On April 9, 2012, the contracting officer issued a final decision on the matter.  Def.'s App. A9–10 (Apr. 9, 2012 final decision); see also Compl. ¶ 23.  The contracting officer determined that, "[b]ecause the amount of taxes paid [was] consistently less than what [was] negotiated and executed in the lease, the government [was] entitled to a reimbursement for the difference in what was paid and what is provided as part of annual and monthly rent."  Def.'s App. A9 (Apr. 9, 2012 final decision).  The contracting officer concluded that "the excess obligation due [to] GSA is confirmed as $824,416.01."  Id.  The letter advised that "[t]his [was] the final decision of the Contracting Officer," and that, pursuant to the Contract Disputes Act of 1978 (the CDA), Palafox could appeal the decision either to the Civilian Board of Contract Appeals (CBCA or Board) or the United States Court of Federal Claims (Court of Federal Claims).  Id. at A10 (emphasis omitted).

B.    Procedural History

Palafox appealed the contracting officer's April 9, 2012 final decision to the CBCA on July 2, 2012.  Compl. ¶ 26; see Def.'s App. A11 (CBCA Notice of Docketing).  Palafox argued before the CBCA that the tax adjustment clause "require[d] GSA to pay no less than the baseline $250,000 each year for real estate taxes," and that GSA's $831,858 withholding constituted a breach of contract.  Def.'s App. A19–20 (CBCA Compl.).  On September 7, 2012, the government filed a motion to dismiss for lack of jurisdiction, arguing that the CBCA lacked jurisdiction over Palafox's appeal because

Palafox failed to submit a certified claim to the contracting officer for a final decision. Def.'s App. A26 (Def.'s CBCA Mot. to Dismiss); see Compl. ¶ 27; cf. 41 U.S.C. § 7103(b) (requiring contractors to certify claims over $100,000).

On September 11, 2012, the CBCA issued an order directing Palafox to "consider whether [its] correspondence with the contracting officer rises to the level of a claim that was . . . properly certified." Def.'s App. A37–38 (CBCA Sept. 11, 2012 Order); see Compl. ¶ 28. The CBCA's order of September 11, 2012 further provided: "If the answer is no, [Palafox] and [the government] should jointly request to withdraw the appeal. If the answer is yes, [Palafox] should affirmatively respond to [the government's] motion." Def.'s App. A38 (CBCA Sept. 11, 2012 Order). By a letter dated September 17, 2012, Palafox requested that the CBCA revise or vacate its order of September 11, 2012. Def.'s App. A39 (Sept. 17, 2012 letter). Palafox argued that the CDA's certification requirements were inapplicable because Palafox had appealed a contracting officer's final decision on a government claim. Id.; see also Compl. ¶ 28. A status conference was held on September 18, 2012, see Def.'s App. A39 (Sept. 17, 2012 letter) (stating that a status conference was scheduled for September 18, 2012), and, on October 9, 2012, the parties filed a joint motion to dismiss without prejudice "so that Palafox [could] obtain a contracting officer's final decision on its claim," Def.'s App. A52 (CBCA Joint Mot. to Dismiss); see also Compl. ¶ 29. The CBCA granted the parties' joint motion to dismiss on October 17, 2012. Def.'s App. A53 (CBCA Order of Dismissal); Compl. ¶ 29.

On October 22, 2012, Palafox submitted a certified claim to the contracting officer in the amount of $831,858, Compl. ¶ 30; see Def.'s App. A54–A80 (certified claim), and the contracting officer issued a final decision denying Palafox's claim on December 20, 2012, Def.'s App. A81–83 (Dec. 20, 2012 final decision); Compl. ¶ 31. Palafox filed its Complaint in this court on April 8, 2013. See Compl. 1. Plaintiff appeals both the contracting officer's April 9, 2012 final decision (Count Four) and the contracting officer's December 20, 2012 final decision (Count Five). Id. ¶¶ 51, 56. Palafox argues, inter alia, that "[t]he plain language of the Tax Adjustment clause does not provide for refunds to the GSA if the real estate taxes are less than the agreed $250,000 baseline," and that, therefore, GSA breached the Lease by setting off the rent payments. Id. ¶¶ 49–50, 54–55; cf. Def.'s App. A19–20 (CBCA Compl.) (arguing the same before the CBCA). Palafox seeks $831,858 plus interest in addition to other relief. Compl. 12 (Prayer for Relief).

On July 22, 2013, defendant filed its Motion, arguing that the court should dismiss Palafox's claim for $824,416.01 for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), and that the court should dismiss Palafox's claim for the remaining $7,441.99, and any other claims that survive defendant's Rule 12(b)(1) motion, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Def.'s Mot. 1.

With respect to defendant's Rule 12(b)(1) motion to dismiss, defendant argues that this court lacks jurisdiction over Palafox's claim for $824,416.01 because this "claim was raised before the CBCA and the CBCA had jurisdiction to consider it." Def.'s Mot. 5. Under the CDA, a contractor may appeal a contracting officer's final decision in one of two fora:  the appropriate board of contract appeals or the Court of Federal Claims.  See 41 U.S.C. § 7104(a)–(b)(1) (2012).  A contractor is compelled to make a forum choice because the election doctrine precludes the appeal of a claim in both fora.  Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988).  Defendant contends that Palafox made a binding election to appeal its $824,416.01 claim to the CBCA and that, therefore, the election doctrine bars this court from hearing the claim.

With respect to defendant's Rule 12(b)(6) motion to dismiss, defendant argues that res judicata bars plaintiff's remaining claim for $7,441.99—and any other claims that survive defendant's Rule 12(b)(1) motion—"because an identical case was dismissed by the CBCA with prejudice."  Def.'s Mot. 1; see id. at 5.  Under the doctrine of res judicata, "a final judgment on the merits bars a second action involving the same parties and the same claim."  Ford-Clifton v. Dep't of Veteran Affairs, 661 F.3d 655, 660 (Fed. Cir. 2011).  Defendant contends that, in granting the parties' joint motion to dismiss, the CBCA "technically reached a final judgment on the merits," and that, pursuant to the doctrine of res judicata, the court should therefore dismiss plaintiff's entire Complaint. Def.'s Mot. 9.

II.    Legal Standards

A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"When considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court accepts as true the undisputed allegations in the complaint and draws all reasonable inferences in favor of the plaintiff."  Low v. United States, 90 Fed. Cl. 447, 450 (2009).  The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Arakaki v. United States, 62 Fed. Cl. 244, 247 (2004).  A dismissal under RCFC 12(b)(1) "is warranted when, assuming the truth of all allegations, jurisdiction over the subject matter is lacking."  Arakaki, 62 Fed. Cl. at 247 (internal quotation marks omitted).  "When a party challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the pleadings to resolve the factual dispute."  Id. (citing Reynolds, 846 F.2d at 747); see 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.30[3] (3d ed. 2013) ("[U]nlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation to the face of the pleadings . . . .").  If the court determines that it does not have jurisdiction, it must dismiss the claim.  RCFC 12(h)(3).

The Tucker Act establishes and limits the jurisdiction of the Court of Federal Claims.  See 28 U.S.C. § 1491 (2012).  The Tucker Act affords this court jurisdiction

over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  Id. § 1491(a)(1).  Although the Tucker Act waives the sovereign immunity necessary for a plaintiff to sue the United States for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights upon a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976).  A plaintiff must establish an independent substantive right to money damages from the United States— that is, a money-mandating source within a contract, regulation, statute or constitutional provision—in order for the case to proceed.  See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

The CDA is such a money-mandating statute.  The CDA confers upon this court the authority to adjudicate a claim for monetary damages arising from "any express or implied contract . . . made by an executive agency for . . . the procurement of property, other than real property in being."  41 U.S.C. § 7102(a)(1); cf. Kelley v. United States, 19 Cl. Ct. 155, 160 (1989) ("Under the CDA, the [Court of Federal Claims] has jurisdiction to entertain claims arising from the lease of real property . . . .").

B.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A motion to dismiss pursuant to RCFC 12(b)(6) asserts a "failure to state a claim upon which relief can be granted."  RCFC 12(b)(6).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570 (2007)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  This means that the complaint must "raise a right to relief above the speculative level."  See Twombly, 550 U.S. at 555.

A complaint can also be dismissed under RCFC 12(b)(6) if it is clear from the face of the complaint that an affirmative defense exists.  Larson v. United States, 89 Fed. Cl. 363, 382 (2009), aff'd, 376 F. App'x 26 (Fed. Cir. 2010).  "Affirmative defenses that

---

[2]      The Rules of the United States Court of Federal Claims (RCFC) generally mirror the Federal Rules of Civil Procedure (FRCP).  C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1541 n.2 (Fed. Cir. 1993); see RCFC 2002 rules committee note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").  Rule 12 of the RCFC is substantially identical to Rule 12 of the FRCP.  Compare RCFC 12 with FRCP 12.  Therefore, the court relies on cases interpreting FRCP 12 as well as those interpreting RCFC 12.

have been considered under a Rule 12(b)(6) motion to dismiss, include, among others, . . . 'the barring effect of res judicata and related preclusion principles.'" Corrigan v. United States, 82 Fed. Cl. 301, 304 (2008) (quoting 5B Charles Alan Wright & Arthur R. Miller (Wright & Miller), Federal Practice and Procedure § 1357 (3d ed. 2008)). "As claim preclusion rests on a final judgment on the merits, it can quite properly and naturally be raised via a merits-based RCFC 12(b)(6) motion." Chisolm v. United States, 82 Fed. Cl. 185, 193 (2008), aff'd, 298 F. App'x 957 (Fed. Cir. 2008).

When ruling on a RCFC 12(b)(6) motion to dismiss, the court "must accept as true all the factual allegations in the complaint." Sommers Oil Co. v. United States (Sommers Oil), 241 F.3d 1375, 1378 (Fed. Cir. 2001). Based on this information, the court must make "all reasonable inferences in favor of the non-movant." Id. Nonetheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Further, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); accord Twombly, 550 U.S. at 555.

III.    Discussion

A.    The Election Doctrine

The CDA requires that claims by a contractor against the government "shall be in writing" and "shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1)–(2). The CDA also requires that claims by the government against a contractor "shall be the subject of a written decision by the contracting officer." Id. § 7103(a)(3). Although contractors must certify claims over $100,000, id. § 7103(b), claims by the government do not require certification, Placeway Constr. Corp. v. United States (Placeway), 920 F.2d 903, 906 (Fed. Cir. 1990), superseded by statute on other grounds, Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102–572, § 907(b), 106 Stat. 4506, 4519.

Because the CDA does not define the term "claim," the court looks to the Federal Acquisition Regulations (FAR) for guidance. M. Maropakis Carpentry, Inc. v. United States (M. Maropakis), 609 F.3d 1323, 1327 (Fed. Cir. 2010). The FAR defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." 48 C.F.R. § 52.233–1(c) (2013). A claim need not be "submitted in any particular form or use any particular wording." M. Maropakis, 609 F.3d at 1327.

Whether a claim is made by a contractor or the government, the CDA requires that a contracting officer issue a final decision on the claim before it can be appealed. See Sharman Co. v. United States, 2 F.3d 1564, 1568 (Fed. Cir. 1993) ("Under the CDA, a final decision by the contracting officer on a claim . . . is a jurisdictional prerequisite to further legal action thereon.") (internal quotation marks omitted), overruled on other

grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995). A contractor may appeal a contracting officer's final decision to either the appropriate board of contract appeals or the Court of Federal Claims. 41 U.S.C. §§ 7104(a)–(b)(1).

Pursuant to the election doctrine, once a contractor chooses the forum in which to lodge its appeal, the contractor's choice is binding, and the contractor is no longer able to pursue its appeal in the alternate forum. See Nat'l Neighbors, Inc., 839 F.2d at 1542 ("[T]he binding election of forums is an 'either-or' alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision."). "Thus, if a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction." Bowers Inv. Co., v. United States (Bowers), 104 Fed. Cl. 246, 254 (2011) (internal quotation marks omitted), aff'd, 695 F.3d 1380 (Fed. Cir. 2012). The election doctrine only applies, however, if the forum chosen by the contractor had jurisdiction over the appeal. See Bonneville Assocs. v. United States, 43 F.3d 649, 653 (Fed. Cir. 1994) (stating that "if the forum originally selected lacked subject matter jurisdiction over the appeal[,] . . . no true choice of forum is available to the contractor and the Election Doctrine does not apply" (internal citation omitted)); Nat'l Neighbors, Inc., 839 F.2d at 1542 ("[U]nder the Election Doctrine, it is a contractor's filing of an appeal . . . in a forum with jurisdiction over the proceeding that precludes the contractor . . . from pursuing its claim in the alternate forum." (emphasis added)).

1.      The Election Doctrine Bars the Court from Hearing Plaintiff's Appeal of the Contracting Officer's April 9, 2012 Final Decision

As discussed above, Palafox appealed the contracting officer's April 9, 2012 final decision to the CBCA in July 2012, and defendant subsequently filed a motion to dismiss for lack of jurisdiction because Palafox had not submitted a certified claim to the contracting officer for a final decision. See supra Part I.B; cf. 41 U.S.C. § 7103(b) (requiring contractors to certify claims over $100,000); Thoen v. United States, 765 F.2d 1110, 1116 (Fed. Cir. 1985) (referring to the contractor's certification requirement as a "jurisdictional prerequisite"). Defendant now argues, however, that the CBCA had jurisdiction over that appeal. Def.'s Mot. 7; see also id. ("Upon further examination, we believe that our earlier motion to dismiss the CBCA case was incorrect with respect to $824,416.01 . . . ."). According to defendant, because the contracting officer's April 9, 2012 final decision was "on a Government claim," Palafox was not required to certify the claim before appealing the decision to the CBCA. Id. (emphasis added); cf. Placeway, 920 F.2d at 906 (stating that "certification is not required for government claims"). For the reasons set forth below, the court finds that it must dismiss plaintiff's appeal of the contracting officer's April 9, 2012 final decision for want of jurisdiction.

a.      The CBCA Had Jurisdiction Over Plaintiff's Appeal of the Contracting Officer's April 9, 2012 Final Decision

Citing the decision of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in Placeway, defendant contends that "[t]he Government's retention of contract payments through setoff, when the contracting officer has determined both liability and damages in a written statement, constitutes a directly[]appealable final decision on a Government claim."  Def.'s Reply 3 (citing Placeway, 920 F.2d at 906–07). Plaintiff does not directly address this contention.[3]  Instead, plaintiff makes the following arguments:  (1) that the CBCA "implicitly—if not explicitly—dismissed the appeal because of a lack of subject matter jurisdiction," Pl.'s Resp. 7, (2) that defendant is judicially estopped from arguing that the CBCA had jurisdiction over Palafox's appeal, id. at 8, (3) that the CBCA "never accepted jurisdiction and thus Palafox never made a binding election," id. at 13, and (4) that Palafox's appeal to the CBCA "was not 'informed, knowing, and voluntary,'" id. at 14 (emphasis and capitalization omitted). The court first addresses the substance of defendant's argument and then addresses each of plaintiff's arguments in turn.

The court finds persuasive defendant's reliance on Placeway.  In that case, the government withheld payment of the contract balance totaling $297,226.12 due to Placeway's alleged untimely performance under a construction contract with the government.  Placeway, 920 F.2d at 905.  Placeway subsequently submitted a written demand to the contracting officer for the contract balance.  Id.  The contracting officer denied the request in a letter, stating that "the contract price balance due would not be 'released' because Placeway had failed to complete the contract 'in a timely manner.'" Id.  The contracting officer's letter did not specify the precise amount of damages to be withheld nor did it include language indicating that it represented a final decision.  See id. at 906.  Placeway filed suit in the United States Claims Court (Claims Court), the predecessor to the Court of Federal Claims, seeking, inter alia, $297,226.12 plus interest. Id. at 905.

The Claims Court held "that the Government had asserted a right of set off," which "constituted a government claim" that did not require certification.  Id. at 906 (internal quotation marks omitted).  The Claims Court concluded, however, that it lacked jurisdiction over Placeway's suit because the contracting officer had not issued a final decision.  Id.  On appeal, the Federal Circuit agreed "that the set off asserted [had] formed] a government claim," id. at 906, which the Circuit Court "characterized as a

---

[3]     In a footnote, plaintiff attempts to "adopt[] the Government's earlier arguments made before the board in its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in Support of Government's Motion to Abate."  Pl.'s Resp. 12 n.6 (internal citations omitted); see Def.'s App. A26–36 (Def.'s CBCA Mot. to Dismiss); Def.'s App. A45–51 (Def.'s CBCA Mot. to Abate).  However, RCFC 5.4(b)(3) provides: "A party must not incorporate a brief or memorandum by reference; the court will disregard any such incorporation."  RCFC 5.4(b)(3).  The court therefore disregards plaintiff's attempt to incorporate by reference defendant's briefing before the CBCA.

claim seeking incidental and consequential damages for Placeway's alleged breach of contract," id. at 906 n.1.  But, finding that the contracting officer "effectively made a final decision on the government claim" by "declin[ing] to pay Placeway the balance due on the contract," id. at 906, the Federal Circuit vacated the Claims Court's dismissal of the claim, id. at 907.  The Federal Circuit observed that the contracting officer's "decision . . . determine[d] both liability and damages," id. at 907; see id. at 906 ("Both issues of liability and of damages should usually be resolved before judicial review is sought."), and noted that the contracting officer had "concluded that Placeway was liable because of delayed performance and effectively ruled that damages would be the contract balance," id. at 907.  Because "a final decision on a government claim" had issued, the Federal Circuit concluded that "the Claims Court ha[d] jurisdiction, even though the claim was not certified."  Id.

In the case at hand, the contracting officer informed Palafox by e-mail on October 19, 2011 that he expected GSA to begin withholding $824,416.01 from future rental payments—the amount for which Palafox was allegedly liable.  Def.'s App. A4 (Oct. 19, 2011 e-mail).  And, as the contracting officer anticipated, GSA sent six partial monthly rent payments to the Bank of New York beginning on December 1, 2011.  Compl. ¶ 20.  In a letter to the contracting officer dated February 7, 2012, Palafox voiced its disagreement with the government's position and requested that the parties meet in an "attempt to resolve th[e] matter."  Def.'s App. A7 (Feb. 7, 2012 letter).  On April 9, 2012, the contracting officer issued a final decision, finding that "[b]ecause the amount of taxes paid [was] consistently less than what [was] negotiated and executed in the lease, the government [was] entitled to a reimbursement for the difference in what was paid and what is provided as part of annual and monthly rent."  Def.'s App. A9 (Apr. 9, 2012 final decision).  The contracting officer concluded that "the excess obligation due [to the] GSA is confirmed as $824,416.01."  Id.

The court finds that, similar to the contract balance withheld by the government in Placeway, the rent withheld by GSA here constituted a government claim.  See Placeway, 920 F.2d at 906 (finding "that the set off asserted [was] a government claim").  Because the contracting officer found Palafox liable for paying taxes that "were consistently less than what [was] negotiated and executed in the lease" and assessed damages in the amount of $824,416.01, Def.'s App. A9 (Apr. 9, 2012 final decision), the court also finds that the contracting officer's April 9, 2012 decision was a final decision that determined both liability and damages.  Accordingly, the contracting officer's April 9, 2012 decision was a final decision on a government claim.  The court therefore concludes that the CBCA had jurisdiction over plaintiff's appeal.  See Placeway, 920 F.2d at 906 ("Because certification is not required for government claims, the Claims Court would have jurisdiction over an appeal from a decision of a [contracting officer], provided it is final.").

b.      The CBCA Neither Explicitly Nor Implicitly Dismissed Plaintiff's Appeal for Want of Jurisdiction

Plaintiff argues that the CBCA "implicitly—if not explicitly—dismissed the appeal because of a lack of subject matter jurisdiction." Pl.'s Resp. 7; see also id. at 9 ("There is no doubt that the [CBCA] dismissed the appeal because of [a] lack of subject matter jurisdiction."). The court disagrees.

In support of its argument, plaintiff refers to the CBCA's order of September 11, 2012, in which the CBCA stated that, "[b]ased on a cursory review of the appeal file," it appeared that the CBCA's decision in Red Gold, Inc. v. Department of Agriculture, CBCA 2259, 12–1 BCA ¶ 34,921 (2011), applied to the facts of plaintiff's appeal.[4] Def.'s App. A37 (CBCA Order of Sept. 11, 2012); cf. Def.'s App. A33 (Def.'s CBCA Mot. to Dismiss) (arguing that the CBCA should dismiss plaintiff's appeal because, like the appellant in Red Gold, plaintiff failed to certify its claim to the contracting officer for a final decision). The CBCA ordered plaintiff "to review Red Gold and then respond to [defendant's] motion [to dismiss]." Def.'s App. A37 (CBCA Order of Sept. 11, 2012). The CBCA suggested that, prior to filing a response, plaintiff should discuss with defendant "the jurisdictional nuances of the CDA and how it might best resolve this matter." Id. at A37–A38. The CBCA further advised:

---

[4]      To the extent that plaintiff argues that the CBCA's order of September 11, 2012 was itself a decision on a jurisdictional issue, defendant correctly observes that "[c]ontested jurisdictional issues must be decided by a three-judge panel." Def.'s Reply 3; cf. Def.'s App. A38 (CBCA Order of Sept. 11, 2012) (signed by a single CBCA judge). Rule 1(e) of the CBCA's Rules of Procedure provides that cases are "assigned to a panel consisting of three judges, with one member designated as the presiding judge, . . . [who] is responsible for processing the case." CBCA Rule 1(e). Absent certain exceptions not present here, all contested dispositive matters must be decided by a majority of the panel. Id.; cf. CBCA Rule 12(e) (providing that the presiding judge alone may issue an order of dismissal only if the motion to dismiss is uncontested).

At the time of the CBCA's Order of September 11, 2012, plaintiff had not yet responded to defendant's motion to dismiss, and, therefore, the CBCA could not have reasonably concluded that defendant's dispositive motion was uncontested. In fact, in a letter dated September 17, 2012, plaintiff sent a letter to the CBCA judge who had signed the September 11, 2012 Order stating that plaintiff "intend[ed] to respond [to] and oppose [defendant's] Motion." Def.'s App. A39 (Sept. 17, 2012 letter); see also id. at A41 (stating that plaintiff "reserve[d] its right to respond formally to [defendant's] [m]otion"). Accordingly, the CBCA's September 11, 2012 Order, signed by a single CBCA judge, could not have constituted a decision on a jurisdictional issue.

> In addressing [defendant's] motion, [plaintiff] should consider whether . . . [its] claim . . . was properly certified. If the answer is no, [the parties] should jointly request to withdraw the appeal. If the answer is yes, [plaintiff] should affirmatively respond to [defendant's] motion.

Id.; cf. 41 U.S.C. § 7103(b) (requiring contractors to certify claims over $100,000).

On September 17, 2012, plaintiff responded to the court's order of September 11, 2012 with a letter requesting that the CBCA "revise and[/]or vacate its order." Def.'s App. A39 (Sept. 17, 2012 letter). Plaintiff claimed that the CBCA's "[o]rder accept[ed]—without the benefit of a submission from [plaintiff]—the fundamental premise of the Government's Motion [to dismiss] that the sole jurisdictional issue is whether or not [plaintiff's claim] . . . was . . . properly certified." Def.'s App. A39 (Sept. 17, 2012 letter). Plaintiff argued that the CDA's certification requirements were inapposite "[b]ecause this is a Government claim from which Palafox has appealed." Id. at A40. Plaintiff further stated that it did not intend for the letter to constitute its response to defendant's motion to dismiss and that it "reserve[d] its right to respond formally to the [g]overment's [m]otion." Id. at 41; see id. ("The purpose of this letter is simply to provide a complete picture of the facts with regard to limited aspects of the Board's [September 11, 2012] Order ahead of the Status Conference scheduled for September 18, 2012.").

On September 18, 2012, defendant filed a motion to abate, in which defendant "urge[d] the Board . . . to abate th[e] Appeal until the parties have fully briefed the Board on the jurisdictional issues." Id. at A45–46 (Def.'s CBCA Mot. to Abate); see id. at A47 ("[Plaintiff's] arguments [in the September 17, 2012 letter] present new issues, which provide all the more reason to abate the proceedings until after the parties have fully briefed the Board and the Board rules[]on the jurisdictional issues."). Defendant also presented arguments in opposition to the arguments set forth in plaintiff's September 17, 2012 letter. Id. at A48–A50. The CBCA held a status conference with the parties on September 18, 2012, see Def.'s App. A39 (Sept. 17, 2012 letter) (stating that a status conference was scheduled for September 18, 2012); Pl.'s Resp. 6 (confirming that "[a] status conference was held on September 18, 2012"), but the details of this status conference are not known to the court.

On October 9, 2012, the parties filed a joint motion to dismiss without prejudice "so that Palafox [could] obtain a contracting officer's final decision on its claim." Def.'s App. A52 (CBCA Joint Mot. to Dismiss); see Pl.'s Resp. 6 (stating that, "because Palafox could not establish that there was a properly certified claim as directed by the [CBCA's] order, Palafox agreed with the Government to file a joint motion to dismiss the appeal without prejudice" (emphasis omitted)). Further to the parties' joint motion to dismiss, the CBCA dismissed plaintiff's appeal without issuing a ruling on defendant's motion to

dismiss for lack of jurisdiction.  See Def.'s App. A53 (CBCA Order of Dismissal) ("On October 9, 2012, the parties jointly moved to dismiss the appeal.  Accordingly, [the appeal] is DISMISSED."); Pl.'s Resp. 6 (conceding that "the jurisdictional issues raised by the Government's motion to dismiss were never fully briefed, and the board never ruled on the motion" (emphasis omitted)).  The court does not impute more to the CBCA's dismissal decision than was expressed.  Accordingly, the court finds that the CBCA did not dismiss plaintiff's appeal for want of subject matter jurisdiction; but, rather, it was dismissed at the request of the parties.

> c.  The Doctrine of Judicial Estoppel Cannot Vest this Court with Subject Matter Jurisdiction

Plaintiff also posits that defendant is judicially estopped from arguing that the CBCA had jurisdiction over plaintiff's appeal because this position is inconsistent with defendant's earlier position before the CBCA.  Pl.'s Resp. 7; cf. Def.'s Mot. 7 (arguing that its "earlier motion to dismiss the CBCA case was incorrect").  The doctrine of judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (internal quotation marks omitted).

As defendant correctly observes, however, "principles of estoppel do not apply to jurisdiction."  Def.'s Reply 5.  "It is well settled that no action of the parties can confer subject-matter jurisdiction on a tribunal and that the principles of estoppel do not apply to vest subject-matter jurisdiction where Congress has not done so."  Dunklebarger v. Merit Sys. Prot. Bd., 130 F.3d 1476, 1480 (Fed. Cir. 1997); see Son Broad., Inc. v. United States, 42 Fed. Cl. 532, 536 (1998) ("Jurisdiction is conferred by Congress, not by defendant's arguments in [a prior] court proceeding."); see also Whiting v. Krassner, 391 F.3d 540, 544 (3d Cir. 2004) ("[T]here is an exception to the general concept of judicial estoppel when it comes to jurisdictional facts or positions, such that it has been said that judicial estoppel . . . cannot conclusively establish jurisdictional facts." (alteration in original) (internal quotation marks omitted)).  The case law unequivocally establishes that defendant's adoption of inconsistent positions in this case cannot confer jurisdiction upon this court to hear plaintiff's claim.[5]  Colman v. United States, 96 Fed. Cl. 633, 639 (2011) (finding that although the government had made inconsistent jurisdictional arguments,

---

[5]  Noting that government attorneys are "public servants," the court admonishes defendant for "'taking a litigation position that opens it up to the criticism that it has whipsawed an opponent both because it is unfair to the plaintiff and because it wastes the resources of the plaintiff, the executive branch, and the judiciary.'"  Mata v. United States, 107 Fed. Cl. 618, 624 (2012) (quoting Phillips v. United States, 77 Fed. Cl. 513, 521 (2007)).

"this inconsistency does not confer jurisdiction on this Court"); accord Whiting, 391 F.3d at 544 ("[C]ourts have generally refused to resort to principles of judicial estoppel to prevent a party from 'switching sides' on the issue of jurisdiction."). Thus, although defendant's inconsistent positions may have affected plaintiff adversely, the doctrine of judicial estoppel cannot operate here as plaintiff urges.

> d.     Plaintiff's Appeal to the CBCA Was a Binding Election of Forum

Plaintiff next argues that the election doctrine does not apply because "the board never accepted jurisdiction,"[6] Pl.'s Resp. 13; see id. (claiming that the CBCA "believe[d] it lack[ed] subject matter jurisdiction over the appeal before it"), and, therefore, "there was no binding earlier election of the board as a forum," id. at 14. According to plaintiff, "[f]or [a] motion to dismiss based on the election doctrine to be ripe for action at this Court, the board must have determined whether, as a matter of law, the board had jurisdiction over the appeal." Id. at 13 (citing Nat'l Neighbors, Inc., 839 F.2d at 1542–43); see id. at 14 (arguing that because the CBCA dismissed plaintiff's claim before determining whether it had jurisdiction, "the question of whether this Court should apply the election doctrine in this case will never 'ripen'"). Plaintiff also contends that "'[t]his court may not apply the Election Doctrine to bar a suit until it is certain that a 'binding election' before a board of contract appeals has occurred.'" Pl.'s Resp. 13 (quoting States Roofing Corp. v. United States, 70 Fed. Cl. 299, 301 (2006)).

Defendant counters that "the election doctrine does not require the board to affirmatively 'accept' jurisdiction by denying a motion to dismiss." Def.'s Reply 7. Defendant contends that "[t]he pivotal question is not whether the board affirmatively 'accepted' jurisdiction by denying a motion to dismiss," but, rather, "'whether the board possessed jurisdiction.'" Id. (quoting Bonneville Assocs., 43 F.3d at 653). According to defendant, "[t]he election doctrine applies when, as here, the board possesses jurisdiction, the board does not decide any jurisdictional issues, and the appellant voluntarily withdraws its appeal and then files a complaint in this Court."[7] Id.

---

[6]     Plaintiff presents this argument in the alternative to its argument that the CBCA dismissed its appeal because of a lack of subject matter jurisdiction. Pl.'s Resp. 14 n.7; cf. supra Part III.A.2 (addressing plaintiff's argument that the CBCA dismissed plaintiff's appeal because of a lack of jurisdiction).

[7]     The court notes that defendant's characterization of the procedural history of the case is lacking in detail. Plaintiff and defendant filed a joint motion to dismiss plaintiff's appeal of the contracting officer's April 9, 2012 final decision, "so that Palafox [could] obtain a contracting officer's denial decision on its claim." Def.'s App. A52 (CBCA Joint Mot. to Dismiss). The CBCA granted the parties' joint motion to dismiss on October 17, 2012, id. at A53 (CBCA Order of Dismissal), and plaintiff submitted a certified claim to the contracting officer five days later, id. at A54–80 (certified claim).

The court finds inapposite <u>National Neighbors</u> and <u>States Roofing</u>, the cases upon which plaintiff relies.  The plaintiff in <u>National Neighbors</u> appealed a contracting officer's final decision to the applicable board of contract appeals.  Before the board decided whether National Neighbors had timely filed its appeal—and thus whether it possessed jurisdiction over the appeal, National Neighbors "filed a complaint in the Claims Court 'to protect [National Neighbors'] rights in the event that the [board] determines that [National Neighbors'] appeal . . . was untimely filed."  <u>National Neighbors, Inc.</u>, 839 F.2d at 1541 (some alterations in original).  The Claims Court found that the election doctrine applied and dismissed National Neighbors' complaint for lack of jurisdiction.  <u>See id.</u>  The Federal Circuit vacated and remanded, <u>id.</u> at 1544, holding that "[t]he proceeding before the Claims Court was not ripe for [dismissal]," <u>id.</u> at 1541.  The Federal Circuit explained that, "[f]or the proceeding before the Claims Court to be ripe for action, the board first must determine whether, as a matter of fact, National Neighbors' appeal was timely and thus whether, as a matter of law, the board had jurisdiction over National Neighbors' appeal."  <u>Id.</u> at 1543; <u>see also id.</u> ("Prior to the board determining whether National Neighbors' appeal is timely and that the board has jurisdiction and can resolve the dispute, it is not possible to determine under the Election Doctrine whether National Neighbors has made a binding election to choose the board for resolution of its dispute with the contracting officer, by appealing to the board.").  The Federal Circuit concluded:

> Because, at the time the Claims Court dismissed for lack of jurisdiction National Neighbors' complaint, the board had not determined whether it had jurisdiction over National Neighbors' appeal, we hold that the proceeding before the Claims Court was not ripe for the Claims Court to dismiss National Neighbors' complaint pursuant to the Contracts Disputes Act on grounds that National Neighbors had made a binding election under the Election Doctrine by appealing to the board the contracting officer's adverse decision.

<u>Id.</u>

<u>States Roofing</u> presents a similar set of factual circumstances.  In that case, after appealing the final decision of a contracting officer to the applicable board of contract appeals, States Roofing filed a complaint in this court to "preserve . . . any of its CDA claims over which the [board] might decline jurisdiction."  <u>States Roofing Corp.</u>, 70 Fed. Cl. at 300.  The court stated that a "contractor may file a protective suit in this court when the same claims have been presented in an appeal to a board of contract appeals and that

---

The contracting officer denied plaintiff's claim on December 20, 2012.  <u>Id.</u> at A81–83 (Dec. 20, 2012 final decision).  Plaintiff filed this Complaint appealing both the contracting officer's April 9, 2012 final decision and the contracting officer's December 20, 2012 final decision.  Compl. ¶¶ 51, 56.

board has not yet determined whether the appeal before it is timely." Id. at 301 (citing, inter alia, National Neighbors, Inc., 839 F.2d at 1543); see id. (stating that "[t]he lesson of National Neighbors is that dismissal of a suit in this court because of the Election Doctrine would be premature if a board of contract appeals has not yet determined the timeliness of an appeal before that board which presents the same claims"). The court held that because the board had not yet decided whether it had jurisdiction over States Roofing's appeal, "dismissal of [its] complaint before this court [was] not yet ripe under the Election Doctrine." Id. at 302; see id. at 300 (staying the case "pending either a specific jurisdictional determination by the [board] or a ruling on the merits by the board"). The timeliness issue presented in National Neighbors and States Roofing, the two cases upon which plaintiff relies, is not before this court.

The court considers the case relied upon by defendant, Bonneville Associates, more analogous to the facts of this case. After appealing a contracting officer's final decision to the applicable board of contract appeals, the plaintiff in Bonneville Associates moved to withdraw the appeal, and the board dismissed the appeal without prejudice. Bonneville Assocs., 43 F.3d at 651. Bonneville subsequently filed a complaint in this court, id., which the government moved to dismiss on the grounds that "Bonneville's filing of a notice of appeal with the board was a binding election depriving the Court of Federal Claims of jurisdiction." Id. at 653. Similar to plaintiff's argument here, Bonneville argued "that the board lacked subject matter jurisdiction over its appeal and thus that Bonneville's filing of a notice of appeal with the board was not a binding election." Id. at 652. This court concluded that the board had jurisdiction over Bonneville's appeal, and that, therefore, the election doctrine required dismissal of Bonneville's action for lack of subject matter jurisdiction. Id. On appeal, the Federal Circuit observed that "[t]he pivotal question . . . is whether the board possessed jurisdiction over Bonneville's initially filed appeal." Id. at 653. The Federal Circuit agreed with this court's analysis of the jurisdictional issue, and held that because the board had jurisdiction over Bonneville's appeal, "the Court of Federal Claims properly applied the Election Doctrine to dismiss Bonneville's action without prejudice for lack of subject matter jurisdiction." Id. at 655.

Unlike in National Neighbors and States Roofing, the plaintiff in this case does not have an appeal currently pending before the CBCA. Here, the appeal filed by plaintiff was dismissed by the CBCA without prejudice further to the parties' joint motion to dismiss.[8] See supra Part I.B. Like the board in Bonneville Associates, the CBCA

---

[8]    The CBCA's order of dismissal does not explicitly state whether plaintiff's appeal was dismissed with or without prejudice. See Def.'s App. A53 (CBCA Order of Dismissal). The order states, in relevant part: "On October 9, 2012, the parties jointly moved to dismiss the appeal. Accordingly, [the appeal] is DISMISSED." Id. As is discussed in more detail below in Part III.B, the joint motion to dismiss referred in the order was filed "[p]ursuant to CBCA Rule 12(d)." Id. at A52 (CBCA Joint Mot. to

dismissed plaintiff's appeal without making a determination as to whether it possessed jurisdiction over the appeal.  See supra Part III.A.2; Def.'s Reply 7 (observing that the board in Bonneville "did not make any jurisdictional decisions").  And, as the court did in Bonneville Associates, here the court examines whether the board had jurisdiction over plaintiff's appeal, and, concluding that it did, dismisses plaintiff's action for lack of subject matter jurisdiction.  See Parts III.A.1.a–e.  Thus, in accordance with the Federal Circuit's guidance in Bonneville Associates, the court finds that plaintiff's appeal to the CBCA was a binding election and that its claim before this court is ripe for dismissal.

          e.        Plaintiff's Appeal to the CBCA Was "Informed, Knowing, and Voluntary"

          As a further argument, plaintiff contends that its decision to appeal to the CBCA "was not informed, knowing, and voluntary," Pl.'s Resp. 14 (capitalization, emphasis and internal quotation marks omitted), because the contracting officer's April 9, 2012 final decision "misled Palafox into believing that the decision could be appealed to the [CBCA]," id. at 7; see id. at 14 (arguing that the contracting officer "misrepresented the viability and/or availability of the forums").[9]  As plaintiff suggests, "[t]he Election Doctrine requires . . . the contractor's choice of forum be informed, knowing, and voluntary."  Bonneville Assocs., 43 F.3d at 655 (internal quotation marks omitted).  In addition, "a true 'choice' of forum . . . involve[s] . . . an informed exercise of the contractor's right to elect between two or more alternative, coexisting, and viable remedies actually available to the contractor at the time of the election."  Olsberg Excavating Co. v. United States, 3 Cl. Ct. 249, 251 (1983).

---

Dismiss).  CBCA Rule 12(d) provides that "[w]hen circumstances beyond the control of the Board prevent the continuation of proceedings in a case, the Board may, in lieu of issuing an order suspending proceedings, dismiss the case without prejudice to reinstatement within 180 calendar days after the date of the dismissal."  CBCA Rule 12(d).  The court therefore understands that the CBCA dismissed plaintiff's appeal without prejudice.  Cf. infra Part III.B (finding that the order of dismissal without prejudice was converted to an order of dismissal with prejudice after neither party reinstated the case within 180 days).

[9]     Plaintiff urges that if the court lacks jurisdiction to hear its claim, then the contracting officer's December 20, 2012 final decision advising plaintiff of its right to appeal to this court was also a misrepresentation.  Pl.'s Resp. 14 n.8.  This misrepresentation, plaintiff explains, allows a finding that "Palafox's appeal to this Court . . . was not knowing and informed."  Id.  Because the court requests additional briefing on whether it possesses jurisdiction over plaintiff's appeal of the contracting officer's December 20, 2012 final decision, see infra Part III.A.2, this issue is not ripe for resolution.

The contracting officer's April 9, 2012 final decision states, in part:  "Pursuant to the Contract Disputes Act of 1978, this decision may be appealed to the [CBCA] . . . .  In lieu of appealing to the [CBCA], you may bring an action directly to the U.S. Court of Federal Claims . . . ."  Def.'s App. A10 (Apr. 9, 2012 final decision).  Because the contracting officer's April 9, 2012 decision was a final decision on a government claim, see supra Part III.A.1, plaintiff could have appealed the decision to either fora.  The CBCA's order dismissing plaintiff's appeal without prejudice did not convert the CBCA into an unavailable or unviable forum.  The court therefore is satisfied that plaintiff's decision to appeal to the CBCA was informed, knowing and voluntary.

Given the foregoing, the court concludes that the election doctrine bars the court from hearing plaintiff's appeal of the contracting officer's April 9, 2012 final decision.  See supra Parts III.A.1.a–e.  The court must therefore dismiss this claim for lack of jurisdiction.[10]  See Bowers, 104 Fed. Cl. at 254 ("[I]f a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction.").

> 2.   It Is Unclear Whether the Election Doctrine Bars the Court from Hearing Plaintiff's Appeal of the Contracting Officer's December 20, 2012 Final Decision

---

[10]   The court recognizes that the Contracts Disputes Act of 1978 (CDA) is a remedial statute that "was enacted to 'provide[] a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving Government contract claims.'"  Winter v. FloorPro, Inc., 570 F.3d 1367, 1369 (2009) (quoting the CDA, S. Rep. No. 95–1118, at 1, reprinted in 1978 U.S.C.C.A.N. 5235, 5235).  The court further recognizes that dismissal of plaintiff's appeal of the contracting officer's April 9, 2012 final decision may yield an unfair result.  If the court lacks jurisdiction to hear plaintiff's claim for $824,416.01, cf. infra Part III.A.2 (requesting additional briefing on whether the court possesses jurisdiction over plaintiff's appeal of the contracting officer's December 20, 2012 final decision), then the merits of plaintiff claim may never be addressed by either the court or the CBCA—notwithstanding the fact that plaintiff diligently appealed two final decisions denying the claim to both fora.  However, the court's jurisdiction is limited by the language of the CDA, as interpreted by the United States Court of Appeals for the Federal Circuit.  See, e.g., Bonneville Assocs. v. United States, 43 F.3d 649, 653 (1994); Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990), superseded by statute on other grounds, Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102–572, § 907(b), 106 Stat. 4506, 4519; Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (1988).  Thus, as to plaintiff's appeal of the contracting officer's April 9, 2012 final decision, the court cannot avoid an unfair result given the limitations on the court's jurisdiction.

In addition to appealing the contracting officer's April 9, 2012 final decision, plaintiff also appeals the contracting officer's December 20, 2012 final decision. Compl. ¶¶ 53–57 (Count Five); see Pl.'s Resp. 6 (stating that plaintiff "appeal[s] both the contracting officer's April 9, 2012 final decision and the contracting officer's December 20, 2012 final decision"). Defendant's briefing does not directly address whether the election doctrine bars the court from hearing plaintiff's appeal of the contracting officer's December 20, 2012 final decision.

Defendant concedes, however, that it is "unaware of a basis to challenge the Court's jurisdiction to entertain Palafox's claim for $7,441.99." Def.'s Mot. 9. Because the contracting officer's April 9, 2012 final decision found plaintiff liable for $824,416.01 in damages, Def.'s App. A9 (Apr. 9, 2012 final decision), the additional $7,441.99 that plaintiff now seeks was not subject to the contracting officer's April 9, 2012 final decision, see Teller Envtl. Sys., Inc. v. United States, 802 F.2d 1385, 1389 (Fed. Cir. 1986) ("[A]ll contract claims, whether by contractor against the government or vice versa, must be submitted to the contracting officer for decision."). Therefore, as defendant correctly observes, the CBCA did not have jurisdiction over plaintiff's $7,441.99 claim and the election doctrine does not bar the court from hearing this claim.

Defendant's admission that it is unaware of any jurisdictional hurdle to plaintiff's $7,441.99 claim suggests that defendant is also unaware of any jurisdictional hurdle— whether presented by the election doctrine or otherwise—to plaintiff's appeal of the contracting officer's December 20, 2012 final decision denying plaintiff's claim for $831,858. Plaintiff's appeal of the contracting officer's December 20, 2012 final decision is the only conceivable basis on which plaintiff's $7,441.99 claim could be before the court. See 41 U.S.C. § 7104(b)(1) (providing that a contractor may appeal a contracting officer's final decision to the Court of Federal Claims); cf. Sharman Co., 2 F.3d at 1568–69 ("Under the CDA, a final decision by the contracting officer on a claim . . . is a jurisdictional prerequisite to further legal action thereon." (internal quotation marks omitted)). If defendant is "unaware of a basis to challenge the Court's jurisdiction to entertain Palafox's claim for $7,441.99," Def.'s Mot. 9, then, it is possible that defendant is also unaware of a basis to challenge the court's jurisdiction to entertain plaintiff's remaining claim for $824,416.01. However, because neither party directly addresses whether the court possesses jurisdiction over plaintiff's appeal of the contracting officer's December 20, 2012 final decision, the court requests supplemental briefing on this issue. See supra Part IV (establishing the supplemental briefing schedule).

B.     Res Judicata

The well-established legal doctrine of res judicata dictates that "a final judgment on the merits bars a second action involving the same parties and the same claim." Ford-

Clifton, 661 F.3d at 660; see Brown v. Felsen, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.").  Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s]  judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980).  The doctrine of res judicata is not limited to judgments issued by courts:   "[W]hen an administrative agency is acting in a judicial capacity and resolve[s] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966).

Defendant argues that plaintiff's claim for $7,441.99, "and any others that could survive [its] jurisdictional motion[,] should be dismissed on res judicata grounds because the CBCA technically reached a final judgment on the merits of this case pursuant to CBCA Rule 12(d)." Def.'s Mot. 9.  Rule 12(d) of the CBCA provides that the CBCA may "dismiss the case without prejudice to reinstatement within 180 calendar days after the date of dismissal." CBCA Rule 12(d).  Rule 12(d) of the CBCA further provides that "[w]hen a case has been dismissed without prejudice and neither party has timely requested that the case be reinstated, the case shall be deemed to be dismissed with prejudice on the last day such a request could have been made." Id.  Of relevance here is the Federal Circuit's teaching that "[a] dismissal with prejudice is a judgment on the merits for purposes of claim preclusion." Pactiv Corp. v. Dow Chem. Co., 449 F.3d 1227, 1230 (Fed. Cir. 2006).

The CBCA dismissed plaintiff's appeal on October 17, 2012 further to the parties' joint motion to dismiss without prejudice.  Def.'s App. A53 (CBCA Order of Dismissal). Because neither party requested that the case be reinstated within 180 days, the CBCA's dismissal without prejudice was converted to a dismissal with prejudice on April 15, 2013 by operation of CBCA Rule 12(d).  See CBCA Rule 12(d); Pl.'s Resp. 17 (conceding that "the dismissal of the board appeal became a dismissal with prejudice by operation of passage of time").

Plaintiff appealed the contracting officer's December 20, 2012 final decision to this court on April 8, 2013, see Compl. 1, seven days before the CBCA's October 17, 2012 order of dismissal was converted to a final judgment on the merits.  Thus, to the extent that this court possesses jurisdiction over the entirety of plaintiff's appeal of the contracting officer's December 20, 2012 final decision, cf. supra Part III.A.2 (requesting additional briefing on whether the court possesses jurisdiction over plaintiff's appeal of the contracting officer's December 20, 2012 final decision denying plaintiff's claim for $831,858); Def.'s Mot. 9 (claiming that it is "unaware of a basis to challenge the Court's jurisdiction to entertain Palafox's claim for $7,441.99"), the court finds that res judicata

does not bar plaintiff's appeal of the contracting officer's December 20, 2012 final decision to this court, cf. Def.'s Reply 11 (conceding that res judicata would not have barred plaintiff from appealing the contracting officer's December 20, 2012 final decision to the CBCA within 90 days); Def.'s App. A83 (Dec. 20, 2012 final decision) (stating that plaintiff could appeal the decision to the CBCA within 90 days or the Court of Federal Claims within twelve months).  Moreover, given that plaintiff filed his Complaint before the CBCA's October 17, 2012 order of dismissal was converted to a final judgment on the merits, it is not clear from the face of the Complaint at the time it was filed that res judicata, which is an affirmative defense, applies.  The court therefore denies defendant's Rule 12(b)(6) motion to dismiss on res judicata grounds.  See Larson, 89 Fed. Cl. at 382 (stating than an affirmative defense must "'be clearly indicated and must appear on the face of the pleading to be used as the basis for the [Rule 12(b)(6)] motion.'" (quoting Wright & Miller, § 1357)); Corrigan, 82 Fed. Cl. at 304 (stating that res judicata is an affirmative defense for the purposes of a Rule 12(b)(6) motion to dismiss).

IV.    Conclusion

       For the forgoing reasons, defendant's motion to dismiss is GRANTED-IN-PART, STAYED-IN-PART, and DENIED-IN-PART.  The court GRANTS defendant's Rule 12(b)(1) motion as to plaintiff's appeal of the contracting officer's April 9, 2012 decision (Count Four).  See supra Part III.A.1.  The court STAYS defendant's Rule 12(b)(1) motion as to plaintiff's appeal of the contracting officer's December 20, 2012 decision (Count Five) pending the filing of the parties' supplemental briefing.  See supra Part III.A.2.  The court DENIES defendants Rule 12(b)(6) motion and finds that the doctrine of res judicata does not bar plaintiff's claim for $7,441.99 or any other claims that survive defendant's Rule 12(b)(1) motion.  See supra Part III.B.

       Further to Part III.A.2 above, defendant shall file a supplemental brief, not to exceed fifteen pages, on the issue of whether the election doctrine bars the court from hearing plaintiff's appeal of the contracting officer's December 20, 2012 final decision at or before 5:00 p.m. Eastern Standard Time (EST) on Monday, February 24, 2014. Plaintiff shall file a response to defendant's brief, not to exceed ten pages, at or before 5:00 p.m. EST on Monday, March 3, 2014, and defendant may file a reply to plaintiff's response, not to exceed seven pages, at or before 5:00 p.m. EST on Friday, March 7, 2014.

       IT IS SO ORDERED.

                                        s/ Patricia E. Campbell-Smith
                                        PATRICIA E. CAMPBELL-SMITH
                                        Chief Judge