# In the United States Court of Federal Claims

No. 13-247C

(E-Filed: June 30, 2014)

| | |
|---|---|
| PALAFOX STREET ASSOCIATES, L.P.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>　　　　　　　Defendant. | Election Doctrine; Motion to Dismiss for Lack of Jurisdiction, RCFC 12(b)(1) |

Nick R. Hoogstraten, Washington, DC, for plaintiff.  Frank M. Rapoport, New York, NY, of counsel.

Joshua A. Mandlebaum, Trial Attorney, with whom were Stuart F. Delery, Assistant Attorney General, Robert E. Kirschman, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  John S. Tobey, Assistant General Counsel, Office of General Counsel, United States General Services Administration, Washington, DC, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

　　This is a contract case.  The subject contract pertains to the construction and subsequent lease of a federal courthouse.  At issue is the parties' conflicting interpretation of a tax adjustment clause in the lease.  See Compl., ECF No. 1, ¶¶ 3, 7, 19.

　　On July 22, 2013, defendant moved to dismiss plaintiff's claim for lack of jurisdiction.  Defendant argued, inter alia, that the claim is barred by the election doctrine.  See Def.'s Mot., ECF No. 7.  On February 12, 2014, the court granted-in-part and stayed-in-part defendant's motion; in its decision, the court requested supplemental

briefing from the parties.  See Palafox St. Assocs., L.P. v. United States, 114 Fed. Cl. 773 (2014) (Palafox I or the court's February decision).

Before the court is the Complaint, filed April 8, 2013; Defendant's Motion to Dismiss, attached to which is an appendix (Def.'s App'x), filed July 22, 2013; Plaintiff's Opposition to Defendant's Motion to Dismiss (Pl.'s Opp'n), ECF No. 12, filed September 23, 2013; Defendant's Reply to Plaintiff's Response (Def.'s Reply), ECF No. 17, filed October 29, 2013; Defendant's Supplemental Brief (Def.'s Suppl. Br.), ECF No. 25, filed March 6, 2014; Plaintiff's Response to Defendant's Supplemental Brief (Pl.'s Suppl. Resp.), ECF No. 30, filed March 20, 2014; and Defendant's Reply (Def.'s Suppl. Reply), ECF No. 33, filed March 26, 2014.

For the reasons explained below, the portion of defendant's motion not decided by the Palafox I decision is **STAYED** pending further briefing by the parties.

I.    Background

The background facts and procedural history of this case are set out in detail in the court's February decision.  Palafox I, 114 Fed. Cl. at 777–79.  For ease of reference, the court provides an abbreviated version of that background here.

Palafox is the successor in interest to Keating Development Company (Keating) under a lease between Keating and the General Services Administration (GSA) for the construction and lease of a federal courthouse.  Compl. ¶ 3.  The lease contains a tax adjustment clause, which provides that "[t]he Government shall make an annual lump sum adjustment, as additional payment to or deduction from, its share of any increase or decrease in real estate taxes that are assessed over the agreed upon base year or negotiated dollar amount," and "the base year real estate taxes for purposes of adjustments are hereby established as $250,000."  Def.'s App'x A84 ¶ 1.4, A86 ¶ B. From August 1997 through December 2011, GSA paid plaintiff the yearly $250,000 adjustment.  Compl. ¶ 15.  In 2011, GSA conducted an audit of the lease and determined that the real estate taxes actually paid by plaintiff were less than the $250,000 the government had paid yearly.  Id. ¶ 17.

On June 8, 2011, the contracting officer sent a letter to the trustee under the lease, the Bank of New York, stating that the discrepancy between the annual real estate taxes paid by plaintiff and the annual $250,000 paid by GSA to plaintiff  "created an excess obligation due the government in the amount of $824,416.01."  Compl. ¶¶ 14, 17 (internal quotation marks omitted); see also Def.'s App'x A1.  On September 29, 2011, Keating responded, also by letter, stating that "the $250,000 is an allowance and that [the contracting officer's] analysis of the lease language does not reflect the matter correctly." Def.'s App'x A3; see also Compl. ¶ 19.  The contracting officer replied in an email on

October 19, 2011, stating that GSA would likely withhold from future rental payment the $824,416.01 allegedly owed to the government.  Id. at A4–5.

From December 1, 2011 through May 1, 2012, GSA attempted to offset the amount allegedly owed by sending half of the monthly rent payments due.  Compl. ¶ 20.  The Bank of New York refused the partial rent payments, essentially effecting a setoff of six full monthly rent payments, or $831,858.[1]  Id.  ¶¶ 20, 25.  On February 7, 2012, plaintiff again set forth, in a letter to the contracting officer, its disagreement with the government's interpretation of the tax adjustment clause in the lease.  Def.'s App'x A7.  Plaintiff requested a meeting between the parties in an attempt to resolve the matter.  Id.

On April 9, 2012, the contracting officer issued a decision (the April 2012 decision),[2] finding that "the government [was] entitled to a reimbursement for the difference [between] what was paid and what [was] provided as part of annual and monthly rent . . . and [confirming] the excess obligation due [to] GSA . . . as $824,416.01."  Def.'s App'x A9–10.

Palafox appealed the April 2012 decision to the United States Civilian Board of Contract Appeals (CBCA or the Board) on July 2, 2012.  See Compl. ¶ 26.  Defendant filed a motion to dismiss for lack of jurisdiction at the Board, arguing that the CBCA lacked jurisdiction because plaintiff had not submitted a certified claim to the contracting officer.  Def.'s App'x A26.  The Board did not rule on the question of jurisdiction, but issued an order directing plaintiff to "consider whether [its] correspondence with the contracting officer rises to the level of a claim that was . . . properly certified," and suggesting that the parties should jointly request to withdraw the appeal "[i]f the answer is no."  Id. at A37–38.

Plaintiff initially opposed the Board's recommended course, asserting that certification was unnecessary because Palafox was appealing a government claim.  Id. at A39–41.  Nonetheless, plaintiff subsequently acquiesced, and the parties filed a joint motion to dismiss without prejudice "so that Palafox [could] obtain a contracting officer's final decision on its claim."  Id. at A52.

---

[1]    The parties agree that the amount withheld as a setoff exceeded the amount allegedly owed to the government by $7,441.99.  The parties also agree that the court has jurisdiction over plaintiff's claim for that amount.  See Def.'s Suppl. Br. 1 ("We remain unaware of a basis to challenge the Court's jurisdiction to entertain Palafox's remaining claim for $7,441.99.")

[2]    In the earlier issued opinion in this case, the court determined that it did not have jurisdiction over plaintiff's appeal of the contracting officer's April 9, 2012 decision.  Palafox St. Assocs., L.P. v. United States, 114 Fed. Cl. 773, 781–82 (2014) (Palafox I).

The Board granted the parties' joint motion on October 17, 2012, Def.'s App'x A53, and five days later plaintiff submitted a certified claim to the contracting officer for $831,858 withheld by the government as a setoff (the October 2012 certified claim). Compl. ¶ 30; Def.'s App'x A54–80.  Plaintiff advanced various arguments in support of its position, including claims of breach of contract, estoppel, waiver, laches, and the expiration of the statute of limitations.  See Def.'s App'x A54–80.

The contracting officer issued a decision denying the certified claim on December 20, 2012 (the December 2012 decision).  Def.'s App'x A81–83.  The December 2012 decision, similar to the earlier April 2012 decision, identified as the issue in dispute between the parties the government's claimed entitlement to the $824,416.01 for which it had withheld rent payments as an offset to the allegedly excessive amounts paid to plaintiff.  Compare id. at A9 with id. at A81.  The December 2012 decision also addressed the legal arguments set forth in plaintiff's certified claim; the contracting officer subsequently denied each argument in turn.  Id. at A81–82.  The December 2012 decision included stock language advising plaintiff of its right to appeal the decision to the Board or "[i]n lieu of appealing to the Board of Contract Appeals, . . . [to] bring an action directly to the U.S. Court of Federal Claims."  Id. at A83.

Plaintiff filed a complaint in this court on April 8, 2012.  Defendant filed a motion to dismiss, arguing inter alia, that the court lacked jurisdiction over plaintiff's complaint pursuant to the election doctrine.  The court granted defendant's motion in part, ruling that because plaintiff elected to appeal the April 2012 decision to the Board, the court lacked jurisdiction over plaintiff's appeal of the April 2012 decision.  Palafox I, 114 Fed. Cl. at 782.  In so holding, the court found that the Board had jurisdiction over Palafox's July 2, 2012 appeal of the government's offset claim, and that the claim did not require certification for the Board to exercise jurisdiction.[3]  Id. at 782–84 (citing Placeway Constr. Corp. v. United States, 920 F.2d 903 (Fed. Cir. 1990)).

However, as the court explained in its February decision, it was unclear from the initial briefing on defendant's motion to dismiss whether the election doctrine barred the court from hearing plaintiff's appeal of the contracting officer's December 2012 decision—the second decision on plaintiff's claim.  Palafox I, 114 Fed. Cl. at 788–89.

Defendant conceded that it was "unaware of any jurisdictional hurdle to plaintiff's $7,441.99 claim," an admission that, in the court's view, suggested that there might be no jurisdictional hurdle to plaintiff's appeal of the entirety of the December 20, 2012

---

[3]     Plaintiff has reserved the right to challenge the court's earlier determination that the subject claim in the April 2012 decision was the government's.  Pl.'s Suppl. Resp. 3 n.1.

decision.  Id. at 789.  "[B]ecause neither party directly addresse[d] whether the court possesses jurisdiction over plaintiff's appeal of the contracting officer's December 20, 2012 final decision, the court request[ed] supplemental briefing on this issue."  Id.

## II.     Legal Standards

In considering a motion to dismiss for lack of jurisdiction, the court must "view the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant [might] prevail, dismissal is inappropriate."  Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002).  The plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)).  If the court determines that it lacks jurisdiction, it must dismiss the claim.  Rules of the United States Court of Federal Claims (RCFC) 12(h)(3).

This court has jurisdiction over certain contract claims against the United States pursuant to the Tucker Act, see 28 U.S.C. § 1491(a)(1)(2012) (affording the court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort"), and the Contract Disputes Act (the CDA), 41 U.S.C. § 7102(a)(1); see 28 U.S.C. § 1491(a)(2).

## III.    Discussion

Defendant has responded to the court's request for supplemental briefing, contending that the court does not have jurisdiction over plaintiff's appeal of the December 2012 decision.  Defendant offers three arguments:  (1) plaintiff's October 2012 certified claim effectively sought reconsideration of the contracting officer's April 2012 decision (and asserted a claim for the $7,441.99 difference); (2) because the election doctrine does not permit a contractor to appeal the same claim to a different forum through the use of a post-election request for reconsideration, plaintiff's claim cannot stand, and (3) plaintiff did not request timely reconsideration of the April 2012 decision and thus, the finality of that decision cannot be suspended.  See Def.'s Suppl. Br. 4–5.

Plaintiff responded to the court's request for supplemental briefing, making five arguments:  (1) its October 2012 certified claim was not a request for reconsideration of the April 2012 decision but a new claim; (2) even if a portion or all of its October 2012 certified claim constituted a request for reconsideration, it was timely presented; (3) acceptance of the government's position before the court—which is contrary to the one it took before the Board—requires an invalidation of the Board's dismissal without prejudice because it denied plaintiff the right to pursue its claims—which were not

included in the government's claim; (4) plaintiff was prejudiced by the contracting officer's provision of erroneous notice to Palafox regarding its appeal rights; and (5) should the court determine it lacks jurisdiction, it should transfer plaintiff's appeal to the Board.  See Pl.s' Suppl. Resp. passim.

    A.    Whether Plaintiff's October 2012 Certified Claim Was a Request for Reconsideration

Defendant argues in its supplemental brief that plaintiff's October 2012 certified claim, which was filed at the urging of the government, constituted a new claim for $7,441.99 and a request for reconsideration of the contracting officer's April 2012 decision.  Def.'s Suppl. Br. 5.  Defendant contends that the request for reconsideration was untimely and therefore, did not suspend the finality of the April 2012 decision.  Id. at 11.  The court does not find defendant's efforts to characterize plaintiff's certified claim as a request for reconsideration to be availing.

Defendant acknowledged in its briefing that the CDA does not address requests for reconsideration of a contracting officer's final decision.  Id. at 5.  Defendant further acknowledged that it was unaware of any controlling precedent supporting its argument.  Id.  Instead, defendant pointed to decisions of the court that discuss reconsideration in an attempt to apply the pertinent rules to the case at hand.  Defendant offered the following case excerpt:

> If a contractor timely submits a request for reconsideration of a final CO decision to the Contracting Officer, the time the Contracting Officer spends reviewing the request suspends both the finality of the CO decision and the time for appeal under the CDA.  Suspension of the finality of a Contracting Officer's decision requires both a determination that the contractor had actually sought reconsideration as well as a determination that the Contracting Officer had recognized the request.

Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. 77, 94 (2010) (alterations in original) (internal quotations and citations omitted); see also Def.'s Suppl. Br. 5 (quoting same).

Defendant adds that correspondence with a contracting officer need not be labeled a "'request for reconsideration' to constitute such a request."  Def.'s Suppl. Br. 6.  It is the substance of the request that determines its character.  Id. (citing K & S Constr. v. United States, 35 Fed. Cl. 270, 276 (1996)).

In Environmental Safety Consultants, plaintiffs submitted what they argued were requests for reconsideration of certain aspects of a contracting officer's final decision.  95 Fed. Cl. at 94.  Plaintiffs' correspondence with the contracting officer included a request

that the contracting officer "convert the default termination to a 'no cost termination settlement,'" and a request that the contracting officer reconsider its denial of an equitable adjustment.  Id.  The contracting officer "did not recognize or review the two requests for reconsideration plaintiffs submitted."  Id.  The court ruled that "[b]ecause the Contracting Officer did not recognize the . . . requests for reconsideration, the time to appeal . . . was not suspended."  Id.

In K & S Construction, a contractor sought additional compensation ten months after a termination for default.  K & S Constr., 35 Fed. Cl. at 272.  The contracting officer, however, did not issue a final decision on the later asserted claim.  Id. at 272–73.  The court ruled that the statute of limitations was not tolled by the claims for additional compensation where "plaintiff waited nearly ten months before asking the contracting officer to reexamine the default decision."  Id. at 276.  The court thus found that plaintiffs' request for reconsideration was an untimely one.  Id.

In Metrotop Plaza Assocs. v. United States, 82 Fed. Cl. 598 (2008), another statute of limitations case cited by defendant, the plaintiff argued that contacts it made with the government following the issuance of a contracting officer's final decision, "although not formally identified as a request for reconsideration, were nevertheless intended for that purpose."  Id. at 601.  Plaintiff further argued that the contracting officer's letter proposing a settlement of a tax issue could be viewed as a decision on a request for reconsideration as it contained a departure from the contracting officer's previous views.  Id.  The court agreed with plaintiff's arguments for purposes of tolling the statute of limitations in that instance, following the rule that "'[w]here a plaintiff timely submits a request for reconsideration, the time for appeal under the CDA does not commence until the disposition of the request for reconsideration.'"  Id. (quoting Arono, Inc. v. United States, 49 Fed. Cl. 544, 549 (2010)).

These cases, and the rules derived therefrom, are inapposite on the facts of this case.  The cited cases reflect court consideration of contractors' efforts to revive their appeal rights as well as court examination of correspondence between contractors and contracting officers to determine whether such correspondence qualified as reconsideration and thus, tolled the running of the statute of limitations for appealing the contracting officer's decision.  Evidence of similar consideration on examination in the case at bar is wanting.  Here, plaintiff filed a timely appeal of the contracting officer's April 2012 decision with the Board, and then filed a certified claim, as contemplated by the parties, shortly after the joint dismissal.

Defendant has not pointed to a case construing a certified claim, like the one Palafox filed, as a request for reconsideration, and the court has not identified one.  Not only did the contracting officer, in this case, recognize Palafox's request as a certified claim, but it also issued a new final decision on that claim.  Correspondence between the contracting officer and Palafox cannot be labeled properly as a request for reconsideration—a process for which there is no provision under the statute—where it

explicitly follows the process set out in the Contract Disputes Act for the filing of a certified claim and the receipt of a contracting officer's decision.  <u>See</u> 41 U.S.C. § 7103(a)–(b).

The court finds that plaintiff's certified claim to the contracting officer was precisely that—a certified claim—that was filed at the government's urging.  Because the court does not find that plaintiff's claim was a request for reconsideration, it need not decide whether such request was timely.[4]  <u>Cf.</u> Def's Suppl. Br. 11–14.

B.      The Court's Request for Additional Supplemental Briefing

The court considers important the more straightforward question of whether plaintiff's appeal of the December 2012 decision was subject to plaintiff's election to file its initial claim with the Board.  Because the parties' supplemental briefing does not squarely address this question, the court requests additional briefing.  Counsel should address the following:

1.      Plaintiff points to <u>Kenney Orthopedic, LLC v. United States</u>, 88 Fed. Cl. 688 (2009) and <u>Armour of Am. v. United States</u>, 69 Fed. Cl. 587 (2006) in support of its contention that its certified claim is separate and distinct from the government claim at issue in the April 2012 decision.  In those cases, the court found that a claim for breach of contract was separate and distinct from the government claim of termination of a contract for default.  Defendant should respond to the potential relevance of this line of cases.  Counsel may further address implications, if any, of these cases on the court's finding

---

[4]      The court observes that there is no prescribed time period for requesting reconsideration; the guidance is that such a request must be made within a reasonable time period after the decision in question.  <u>See Cooley v. United States</u>, 324 F.3d 1297, 1305–06 (Fed. Cir. 2003) (remanding to the trial court to determine whether a three year period between an agency's issuance of an initial permit and a provisional permit was "reasonable under the circumstances of [the] case"); <u>C.J. Langenfelder & Son, Inc. v. United States</u>, 341 F.2d 600, 604–05 (Fed. Cir. 1965) (ruling that an agency's request for a supplemental decision over a year after an original decision was "far too belated" where there was no good cause for the delay and opining that "[t]hirty, or perhaps sixty, days is the order of magnitude—unless a special need for a longer period is shown").  Here, six months elapsed between the April 2012 final decision and the filing of plaintiff's October 2012 certified claim.  Most of this time period was spent in litigation at the Board, and plaintiff filed its certified claim only five days after the Board's dismissal without prejudice of its claim.  Under these circumstances, the span of time between the April 2012 decision and the October 2012 certified claim would appear to fall within the range of "reasonable."

regarding the Board's jurisdiction over plaintiff's appeal of the April 2012 decision as described in the court's February decision.

2.    Counsel should discuss whether a direct comparison of plaintiff's certified claim and the government claim supports a finding that there are different factual and legal issues found in the claims and whether the claims are therefore separate and distinct.  Counsel should link their arguments regarding whether the two claims are separate and distinct to an election doctrine analysis.

IV.    Conclusion

The court invites the parties to consider an equitable resolution to this dispute.  If counsel are inclined to attempt mediation or another form of alternative dispute resolution, one option available to the parties is the assignment of a settlement judge for this purpose.

If the parties are not amenable to an equitable resolution of this matter, they simultaneously shall file supplemental briefs, on or before **July 30, 2014**.  Counsel then shall file simultaneously response briefs, on or before **August 14, 2014**.

IT IS SO ORDERED.

 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge