# In the United States Court of Federal Claims

No. 13-247C

(E-Filed:  June 18, 2015)

|  |  |  |
|---|---|---|
| PALAFOX STREET ASSOCIATES, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Motion to Dismiss for Lack of |
| v. | ) | Jurisdiction, RCFC 12(b)(1); Election |
| | ) | Doctrine; 41 U.S.C. § 7107(d); 41 U.S.C. |
| THE UNITED STATES, | ) | § 7103(e); 48 C.F.R. 33.211(a)(4)(v) |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Nick R. Hoogstraten, Washington, D.C., for plaintiff.  Frank M. Rapoport, New York, N.Y., of counsel.

Joshua A. Mandlebaum, Trial Attorney, with whom were Benjamin C. Mizer, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Bryant G. Snee, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  John S. Tobey, Assistant General Counsel, Office of General Counsel, United States General Services Administration, Washington, D.C., of counsel.

## OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

This case involves a contract dispute between Palafox Street Associates, L.P. (Palafox or plaintiff) and the General Services Administration (GSA, government, or defendant).  The subject contract pertains to the construction and subsequent lease of a federal courthouse.  At issue are the parties' conflicting interpretations of a Tax Adjustment clause in the lease and the propriety of GSA's withholding of rent to collect on an alleged excess obligation of $824,416.01.

On July 22, 2013, defendant moved to dismiss plaintiff's action under Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim.  Defendant argued, inter alia, that the election doctrine barred the court from hearing a portion of

1

plaintiff's claim.  On February 12, 2014, the court denied defendant's Rule 12(b)(6) motion and granted-in-part and stayed-in-part defendant's Rule 12(b)(1) motion; in its decision, the court requested supplemental briefing from the parties with respect to defendant's election doctrine argument.  See Palafox St. Assocs., L.P. v. United States, 114 Fed. Cl. 773, 790 (2014) (Palafox I or the February 2014 decision).  On June 30, 2014, the court stayed "the portion of defendant's motion not decided by the Palafox I decision" and directed the parties to submit additional supplemental briefing.  See Palafox St. Assocs., L.P. v. United States, 117 Fed. Cl. 324, 325 (2014) (Palafox II or the June 2014 decision).

Currently before the court is the complaint, ECF No. 1, filed April 8, 2013; Defendant's Motion to Dismiss, attached to which is an appendix (Def.'s App'x), ECF No. 7, filed July 22, 2013; Plaintiff's Opposition to Defendant's Motion to Dismiss (Pl.'s Opp'n), ECF No. 12, filed September 23, 2013; Plaintiff's Supplemental Brief in Response to Court's June 30, 2014 Opinion and Order (Pl.'s Br.), ECF No. 52, filed January 9, 2015; Defendant's Third Supplemental Brief in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction (Def.'s Br.), ECF No. 53, filed January 9, 2015; Plaintiff's Supplemental Brief on Consolidation of Claims (Pl.'s Cons. Br.), ECF No. 58, filed February 23, 2015; Plaintiff's Brief in [Response] to Defendant's January 9, 2015 Third Supplemental Brief (Pl.'s Resp.), ECF No. 59, filed March 9, 2015; and Defendant's Response to Plaintiff's Supplemental Briefs Regarding Defendant's Motion to Dismiss for Lack of Jurisdiction (Def.'s Resp.), ECF No. 60, filed March 9, 2015.

For the reasons explained below, the remaining portion of defendant's Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.      Background

The background facts and procedural history of this case are set out in detail in the court's February 2014 and June 2014 decisions.  Palafox I, 114 Fed. Cl. at 777–79; Palafox II, 117 Fed. Cl. at 325–27.  For ease of reference, the court provides an abbreviated version of the relevant background here.

Palafox is the successor in interest to Keating Development Company (Keating) under a lease between Keating and the General Services Administration (GSA) for the construction and lease of a federal courthouse.  Compl. ¶ 3.  The lease contains a Tax Adjustment clause, which provides, in relevant part: "The Government shall make an annual lump sum adjustment, as additional payment to or deduction from, its share of any increase or decrease in real estate taxes that are assessed over the agreed upon base year or negotiated dollar amount."  Def.'s App'x A84 ¶ 1.4.  Pursuant to a subsequent amendment to the lease, the Tax Adjustment clause was modified to include the following: "In accordance with this paragraph, the base year real estate taxes for purposes of adjustments are hereby established as $250,000."  Id. at A86 ¶ B.

2

From August 1997 through December 2011, GSA paid plaintiff the annual base amount of $250,000 in real estate taxes.  Compl. ¶ 15.  In 2011, GSA conducted an audit of the lease and determined that the real estate taxes actually paid by plaintiff were less than the $250,000 the government had paid yearly.  Id. ¶ 17.

On June 8, 2011, the contracting officer sent a letter to the trustee under the lease, the Bank of New York, stating that the discrepancy between the annual real estate taxes paid by plaintiff and the annual $250,000 paid by GSA to plaintiff "created an excess obligation due the government in the amount of $824,416.01."  Compl. ¶¶ 14, 17 (internal quotation marks omitted); see also Def.'s App'x A1.  On September 29, 2011, Keating responded, also by letter, stating that "the $250,000 is an allowance and that [the contracting officer's] analysis of the lease language does not reflect the matter correctly."  Def.'s App'x A3; see also Compl. ¶ 19.  The contracting officer replied in an email on October 19, 2011, stating that GSA would likely withhold from future rental payment the $824,416.01 allegedly owed to the government.  Def.'s App'x A4–5.

From December 1, 2011 through May 1, 2012, GSA attempted to recoup the amount allegedly owed by sending half of the monthly rent payments due.  Compl. ¶ 20.  The Bank of New York refused the partial rent payments, essentially effecting a setoff of six full monthly rent payments, or $831,858.  Id.  ¶¶ 20, 25.  On February 7, 2012, plaintiff again set forth, in a letter to the contracting officer, its disagreement with the government's interpretation of the Tax Adjustment clause in the lease.  Def.'s App'x A7.  Palafox requested a meeting between the parties in an attempt to resolve the matter.  Id.

On April 9, 2012, the contracting officer issued a final decision (the April 2012 final decision), finding that "the government [was] entitled to a reimbursement for the difference [between] what was paid and what [was] provided as part of annual and monthly rent . . . and [confirming] the excess obligation due [to] GSA . . . as $824,416.01."  Def.'s App'x A9–10.

Palafox appealed the April 2012 final decision to the United States Civilian Board of Contract Appeals (the Board or the CBCA) on July 2, 2012.  See Compl. ¶ 26.  Defendant filed a motion to dismiss for lack of jurisdiction, arguing that the Board lacked jurisdiction because plaintiff had not submitted a certified claim to the contracting officer.  Def.'s App'x A26.  The Board did not rule on the question of jurisdiction, but issued an order directing plaintiff to "consider whether [its] correspondence with the contracting officer rises to the level of a claim that was . . . properly certified," and suggested that the parties should jointly request to withdraw the appeal "[i]f the answer is no."  Id. at A37–38.

Plaintiff initially opposed the Board's recommended course, asserting that certification was unnecessary because Palafox was appealing a government claim.  Id. at

A39–41.  Nonetheless, plaintiff subsequently acquiesced, and the parties filed a joint motion to dismiss without prejudice "so that Palafox [could] obtain a contracting officer's final decision on its claim."  Id. at A52.

The Board granted the parties' joint motion on October 17, 2012, Def.'s App'x A53, and five days later plaintiff submitted a certified claim to the contracting officer for $831,858 withheld by the government as a setoff (plaintiff's certified claim).  Compl. ¶ 30; Def.'s App'x A54–80.  Plaintiff advanced several arguments in support of its position, including breach of contract, estoppel, waiver, laches, and the expiration of the statute of limitations.  See Def.'s App'x A54–80.

The contracting officer issued a final decision denying the certified claim on December 20, 2012 (the December 2012 final decision).  Id. at A81–83.  The December 2012 final decision, similar to the earlier April 2012 final decision, identified as the issue in dispute the government's claimed entitlement to the $824,416.01 that it was withholding in rent payments.  Compare id. at A9 ("To summarize, you are challenging GSA's independent analysis that since the actual real estate taxes [Palafox] has paid for each year of the lease since full assessment of 1999 has been less than the[] actual tax obligation of ownership.  GSA's summary is that this has created an excess obligation due the government in the amount of $824,416.01."), with id. at A81 (similar).  The December 2012 final decision also addressed the various legal arguments set forth in plaintiff's certified claim; the contracting officer denied each argument in turn.  Id. at A81–82.  The December 2012 final decision, also similar to the earlier April 2012 final decision, advised plaintiff of its right to appeal the decision to the Board within ninety days or "[i]n lieu of appealing to the Board of Contract Appeals, . . . [to] bring an action directly to the U.S. Court of Federal Claims[] within twelve months."  Id. at A83; accord 48 C.F.R. 33.211(a)(4)(v) (governing notification of appeal rights that must be included in a contracting officer's final decision).

Plaintiff filed a complaint in this court on April 8, 2012.  Plaintiff's complaint asserts nine counts:  (1) breach of contract – illegal setoff, (2) breach of contract – premature setoff, (3) breach of contract – setoff in excess of claimed debt[1], (4) breach of contract – GSA's setoff claim (disputing the April 2012 final decision), (5) breach of contract – GSA's denial of Palafox's claim for return of setoff amounts (disputing the December 2012 final decision), (6) GSA's setoff is barred by the statute of limitations, (7) GSA's setoff is barred by laches, (8) GSA is estopped from setting off, and (9) declaratory relief.  Compl. ¶¶ 32–81.

---

[1]     The parties agree that the amount withheld as a setoff exceeded the amount allegedly owed to the government by $7,441.99.  The parties also agree that the court has jurisdiction over plaintiff's claim for that amount.  See Def.'s Resp. 19, ECF No. 60 (stating that it is "unaware of a basis to challenge the Court's jurisdiction to entertain Palafox's remaining claim for $7,441.99"); Pl.'s Cons. Br. 2–3, ECF No. 58 (similar).

On July 23, 2013, defendant filed a motion to dismiss, arguing inter alia, that the court lacked jurisdiction over plaintiff's complaint pursuant to the election doctrine. The court granted defendant's motion in part, ruling that because plaintiff had made a binding election to appeal the April 2012 final decision to the Board, the court lacked jurisdiction over plaintiff's appeal of the contracting officer's April 2012 final decision (Count 4). Palafox I, 114 Fed. Cl. at 782. In so holding, the court found the April 2012 final decision was a decision on a government claim, which did not require certification in order for the Board to exercise jurisdiction. Id. at 782–84.

However, as the court explained in its February 2014 decision, it was unclear from the initial briefing on defendant's motion to dismiss whether the election doctrine, or any other jurisdictional hurdle, barred the court from hearing plaintiff's appeal of the contracting officer's December 2012 final decision—the decision on plaintiff's certified claim (Count 5). Palafox I, 114 Fed. Cl. at 788–89. "[B]ecause neither party directly addresse[d] whether the court possesses jurisdiction over plaintiff's appeal of the contracting officer's December 20, 2012 final decision, the court request[ed] supplemental briefing on this issue." Id. at 789.

Further to the court's order, the parties filed supplemental briefing. The parties' briefing focused on whether plaintiff's submission of its certified claim to the contracting officer was effectively a request for reconsideration of the April 2012 final decision. See Palafox II, 117 Fed. Cl. at 327–28. The court concluded that it was not. Id. at 329. The court further opined that the parties' supplemental briefing did not squarely address whether the election doctrine barred plaintiff's appeal of the December 2012 final decision, and directed the parties to address the following:

1. Plaintiff points to Kenney Orthopedic, LLC v. United States, 88 Fed. Cl. 688 (2009) and Armour of Am. v. United States, 69 Fed. Cl. 587 (2006) in support of its contention that its certified claim is separate and distinct from the government claim at issue in the April 2012 decision. In those cases, the court found that a claim for breach of contract was separate and distinct from the government claim of termination of a contract for default. Defendant should respond to the potential relevance of this line of cases. Counsel may further address implications, if any, of these cases on the court's finding regarding the Board's jurisdiction over plaintiff's appeal of the April 2012 decision as described in the court's February decision.[2]

---

[2]     Plaintiff cites to Kenney Orthopedic, LLC v. United States (Kenney), 88 Fed. Cl. 688 (2009), as support for the proposition that "a new claim is one that does not arise from the same set of operative facts as the claim submitted to the contracting officer," and to Armour of America v. United States (Armour), 69 Fed. Cl. 587 (2006), as support

> 2. Counsel should discuss whether a direct comparison of plaintiff's certified claim and the government claim supports a finding that there are different factual and legal issues found in the claims and whether the claims are therefore separate and distinct.  Counsel should link their arguments regarding whether the two claims are separate and distinct to an election doctrine analysis.

Palafox II, 117 Fed. Cl. at 330 (footnote added).  After settlement negotiations proved unsuccessful, the parties filed additional supplemental briefing on the issues requested by the court.  See Unopposed Mot. for Extension of Time, ECF No. 48.

II.      Legal Standards

In considering a motion to dismiss for lack of subject-matter jurisdiction, the court must "view the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant [might] prevail, dismissal is inappropriate." Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002).  The plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)).  If the court

---

for the proposition that "a separate and distinct claim requires certification and submission to the contracting officer."  Pl.'s Resp. 14–15, ECF No. 59.  According to plaintiff:

> These cases remain valid for those two points, which remain central to the election doctrine issue.  However, Palafox did not, and does not, assert that these cases are apposite factually to Palafox's situation, or that they dictate a finding that the election doctrine does not apply to Palafox's claims in this Court.  Palafox relies on other authorities as well as the unique facts of its own case to establish that its certified claim is a new, separate and distinct claim that required certification and a separate final decision.

Id. at 15 (footnote omitted); see also Pl.'s Br. 2, ECF No. 52 (stating that both Kenney and Armour are merely "illustrative of the legal concept" as to whether two claims are separate and distinct).  Defendant argues that these cases are inapposite to the case at hand because both Kenney and Armour involve direct appeals of default termination decisions and requests for monetary relief that had not been subject to a contracting officer's final decision.  See Def.'s Br. 18–19, ECF No. 53 ("The facts presented here are very different.").  Because both parties appear to agree that the factual circumstances of Kenney and Armour are not apposite to the instant case, the court considers it unnecessary to address these cases in more detail.

determines that it lacks subject-matter jurisdiction, it must dismiss the claim.  Rules of the United States Court of Federal Claims (RCFC) 12(h)(3).

This court has jurisdiction over certain contract claims against the United States pursuant to the Tucker Act, see 28 U.S.C. § 1491(a)(1) (2012) (affording the court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort"), or pursuant to the Contract Disputes Act (the CDA), 41 U.S.C. § 7102(a)(1) (2012); see 28 U.S.C. § 1491(a)(2).

III.    Discussion

A.    The Election Doctrine

The CDA requires that claims by a contractor against the government "shall be in writing" and "shall be submitted to the contracting officer for a decision."  41 U.S.C. § 7103(a)(1)–(2).  The CDA also requires that claims by the government against a contractor "shall be the subject of a written decision by the contracting officer."  Id. § 7103(a)(3).  Although contractors must certify claims over $100,000, id. § 7103(b), claims by the government do not require certification, Placeway Constr. Corp. v. United States (Placeway), 920 F.2d 903, 906 (Fed. Cir. 1990), superseded by statute on other grounds, Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102–572, § 907(b), 106 Stat. 4506, 4519).

Because the CDA does not define the term "claim," the court looks to the Federal Acquisition Regulations (FAR) for guidance.  M. Maropakis Carpentry, Inc. v. United States (Maropakis), 609 F.3d 1323, 1327 (Fed. Cir. 2010).  The FAR defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract."  48 C.F.R. § 52.233–1(c) (2014).  A claim need not be "submitted in any particular form or use any particular wording."  Maropakis, 609 F.3d at 1327.  "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (internal quotation marks omitted).

Whether a claim is made by a contractor or the government, the CDA requires that a contracting officer issue a final decision on the claim before it can be appealed.  See Sharman Co. v. United States, 2 F.3d 1564, 1568 (Fed. Cir. 1993) ("Under the CDA, a final decision by the contracting officer on a claim . . . is a jurisdictional prerequisite to

further legal action thereon." (internal quotation marks omitted)), <u>overruled on other grounds by</u> <u>Reflectone, Inc. v. Dalton</u>, 60 F.3d 1572 (Fed. Cir. 1995).

The CDA provides alternative forums for appealing a contracting officer's final decision. "A contractor . . . may appeal the decision to [the appropriate] agency board," or "may bring an action directly on the claim in the United States Court of Federal Claims." 41 U.S.C. § 7104(a), (b)(1); <u>see</u> <u>Nat'l Neighbors, Inc. v. United States</u>, 839 F.2d 1539, 1541 (Fed. Cir. 1988) ("It is well established that, pursuant to the Contract[] Disputes Act, a contractor wishing to contest an adverse final decision by the contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the Claims Court."). It is "[t]his choice [that] has given rise to a body of jurisprudence known as the 'Election Doctrine.'" <u>Nat'l Neighbors</u>, 839 F.2d at 1541.

Pursuant to the election doctrine, once a contractor chooses the forum in which to lodge its appeal, the contractor's choice is binding, and the contractor is no longer able to pursue its appeal in the alternate forum. <u>Id.</u> at 1542. "[T]he binding election of forums is an 'either-or' alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision." <u>Id.</u> "Thus, if a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction." <u>Bowers Inv. Co., v. United States</u> (<u>Bowers</u>), 104 Fed. Cl. 246, 254 (2011) (internal quotation marks omitted), <u>aff'd</u>, 695 F.3d 1380 (Fed. Cir. 2012); <u>see</u> <u>Nat'l Neighbors</u>, 839 F.2d at 1542 ("[U]nder the Election Doctrine, it is a contractor's filing of an appeal . . . <u>in a forum with jurisdiction over the proceeding</u> that precludes the contractor . . . from pursuing its claim in the alternate forum.").

A contractor's appeal of an adverse final decision must be "based on the same claim previously presented to and denied by the contracting officer." <u>Scott Timber</u>, 333 F.3d at 1365. Thus, a contractor "may not present a new claim to [the elected forum] that was not first presented to the contracting officer for a final decision." <u>Modeer v. United States</u>, 68 Fed. Cl. 131, 137 (2005); <u>see</u> <u>Rumsfeld v. Applied Cos.</u>, 325 F.3d 1328, 1333 n.3 (Fed. Cir. 2003) ("[T]he breadth of issues covered in the contracting officer's decision determines the extent of the contractor's right of appeal and the [elected forum's] jurisdiction." (internal quotation marks omitted)). However, this standard "does not require rigid adherence to the exact language or structure of the original administrative CDA claim." <u>Scott Timber</u>, 333 F.3d at 1365.

The issue currently before the court is whether a contractor's appeal to this court of a final decision denying its certified claim is barred by the contractor's earlier appeal of a final decision on a government claim to the Board. Plaintiff argues that the election doctrine does not apply where, as here, a contractor appeals "separate final decisions to

different fora." Pl.'s Br. 4. Certainly the language of the CDA would appear to support plaintiff's position: plaintiff's appeal of the December 2012 final decision, issued in response to plaintiff's certified claim, was brought "directly" to this court "in lieu of appealing . . . to [the] [B]oard." 41 U.S.C. § 7104(b)(1).

Although neither party points to any case, nor is the court is aware of one, that directly addresses the unique factual circumstances in this case, see Pl.'s Resp. 15 n.12 ("Plaintiff has yet to find a case on all fours factually with Plaintiff's situation; nor has the Government cited to one."), the court finds that resolution of this issue is informed by the Bowers case, which involved the appeal to two separate fora of two final decisions by a contracting officer addressing multiple claims arising under the same lease.

1.    Bowers

At issue in Bowers was a lease for office and warehouse space that obligated the government to make monthly rental payments in arrears. Bowers, 104 Fed. Cl. at 249. Renewable yearly, the lease was extended for a total of twelve years and was modified eight times. Id. at 249–50. After the lease expired, Bowers submitted several claims to the contracting officer, including a claim for $22,341.37 for the government's alleged failure to pay the last month's rent under the lease (the first claim). See id. at 250, 255. The contracting officer denied this claim, and Bowers appealed to the Board. Id. During proceedings before the Board, the government produced payment records that suggested that the government had also failed to pay the first three month's rent. Id. The Board disagreed with Bowers' position. Id.; see Bowers Inv. Co. v. Dep't of Transp., CBCA 1196, 09–2 BCA ¶ 34,238 ("For us to agree with Bowers' argument would require our acceptance of a scenario under which one or more of the first three payments . . . were not made and Bowers did not complain in writing or otherwise regarding the . . . error.").

Bowers subsequently submitted two additional claims to the contracting officer: a claim for $56,640.78 for the government's alleged failure to pay the first three month's rent (the nonpayment claim)—which had previously been raised before the Board—and a claim for $64,408.00 for the government's alleged underpayment of rent (the underpayment claim). See Bowers, 104 Fed. Cl. at 251. The contracting officer denied both claims, and Bowers appealed to this court. Id.

The government moved to dismiss under Rule 12(b)(1), arguing that the election doctrine barred the court from exercising jurisdiction over Bowers' nonpayment claim. In the government's view, the nonpayment claim was encompassed by the first claim, the denial of which Bowers elected to appeal to the Board. Id.; see also id. at 254 (noting that the government had argued that Bowers' nonpayment claim was barred by the election doctrine "because it is the same as [Bowers' first] claim, the denial of which was later appealed to the CBCA"). The government also moved to dismiss under Rule 12(b)(6), arguing that Bowers' nonpayment and underpayment claims were barred by claim preclusion because they arose from the same basic facts as Bowers' appeal before

the Board, which issued a final decision upon the merits.  Id. at 251.  The court dismissed Bowers' complaint, holding that it although it possessed jurisdiction over Bowers' claims, they were precluded.

The court framed the election doctrine issue before it as "whether plaintiff's second submission to the contracting officer (the denial of which plaintiff appealed to the court) was separate and distinct from plaintiff's earlier submission (the denial of which plaintiff appealed to the [Board])."  Id. at 255 n.7.  According to the court,

> [a]lthough the Federal Circuit has stated that "Congress definitively rejected the idea that the CDA was abrogating the doctrine of claim preclusion and permitting the splitting of claims based on the same set of transactional facts," Phillips/May Corp. v. United States, 524 F.3d 1264, 1270 (Fed. Cir. 2008) (footnote omitted), the Federal Circuit has also noted that, under the CDA, "a single government contract may give rise to more than one claim, and that a contractor may pursue his rights by filing 'two or more suits' in either one or more fora," Placeway Constr. Corp. v. United States (Placeway), 920 F.2d 903, 907 (Fed. Cir. 1990).  Multiple claims "typically involve separate and distinct disputes over separate and distinct [contracting officer] decisions under a single contract where findings made by the court or the agency boards would not affect the claims" before the other.  BRC [Lease Co., v. United States], 93 Fed. Cl. [67, 71 (2010)]; see also Nwogu v. United States, 94 Fed. Cl. 637, 655 (2010) (finding that plaintiff's claims before the Court of Federal Claims arose "out of the same operative facts" as the claims before the board).

Id. at 254.

In reaching its determination that the election doctrine did not bar the court from exercising jurisdiction over Bowers' nonpayment claim, the court observed that the first claim and the nonpayment claim did not arise from the same operative facts:  "Although both claims [were] based upon the same contract and involve what rent payments were made by the [government] and when they were made, [Bowers'] nonpayment claim and [first] claim are more than twelve years apart and span eight modifications of the Lease."  Id. at 255 (internal quotation marks and citation omitted).  The court also observed that the contracting officer's findings with respect to Bowers' first claim would have little effect on the contractor officer's findings regarding Bowers' nonpayment claim.  Id. at 256 (citing BRC, 93 Fed. Cl. at 71).

The court next turned to defendant's claim preclusion argument, which also entailed an examination of the operative facts of the first claim and the nonpayment claim.  See id. at 258.  The court distinguished the two inquiries by stating that "[w]hereas the election doctrine focuses on the claim plaintiff presented to the

contracting officer, claim preclusion entails a broader examination of any modifications plaintiff could have made to this claim on appeal." Id. at 257. The court ultimately concluded that because Bowers' claims before the court "ar[o]se from the same set of transactional facts as its claim before the [Board], and that plaintiff should have known of the facts giving rise to its present claims," Bowers' nonpayment and underpayment claims were barred on claim preclusion grounds. Id. at 258; cf. id. at 257 (stating that transactional facts have been defined "in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same factual allegations.'" (quoting Ammex, Inc. v. United States, 334 F.3d 1052, 1056 (Fed. Cir. 2003)).

On appeal, the Federal Circuit affirmed the court's decision. The Federal Circuit gave a cursory overview of the court's election doctrine analysis, 695 F.3d at 1383, and found that the court "did not err in holding that it had jurisdiction of the subject matter," id. at 1384. After a more detailed review of the court's claim preclusion analysis, the Federal Circuit found that the court "correctly held that the claims now raised arose from the same transactional facts and the same Lease contract, and could have been and should have been raised in the prior proceeding" and that Bowers' nonpayment and underpayment claims were precluded. Id. at 1384–85.

2.      Comparison of Palafox's Certified Claim with the Government's Claim

In light of Bowers and the cases upon which it relies, the court concludes that in order to resolve whether plaintiff's appeal of the December 2012 final decision to this court is barred by plaintiff's earlier appeal of the April 2012 final decision to the Board, it must determine whether plaintiff's certified claim and the government's claim are considered the same claim (or are separate and distinct). Accord Pl.'s Resp. 8 ("Because the election doctrine prohibits appealing the same claim decided by the contracting officer to two different forums, the Court must examine the two claims decided by the contracting officer to decide whether they are the same claim for election doctrine purposes."). "The need to determine whether a CDA claim is the same as another arises in a variety of contexts," Kellogg Brown & Root Servs., Inc. v. United States (KBR), 115 Fed. Cl. 46, 53–54 (2014), and this court—consistent with the Federal Circuit's approach—has conducted this inquiry by focusing on whether the operative facts and relief sought are the same in the two claims, see, e.g., Scott Timber, 333 F.3d at 1365; Placeway, 920 F.2d at 907; KBR, 115 Fed. Cl. at 53–54; K-Con Bldg. Sys., Inc. v. United States, 107 Fed. Cl. 571, 592 (2012); Bowers, 104 Fed. Cl. at 255. Indeed, the parties agree that the test to be applied here is whether the two claims arise from the same operative facts and seek essentially the same relief. See Def.'s Br. 5 ("The court's analysis of whether the multiple claims involved in this case are the same, or distinct, for purposes of the election doctrine, is controlled by . . . whether the claims arise from 'the same operative facts' and seek 'essentially the same relief'" (quoting Scott Timber, 333 F.3d at 1365)); Pl.'s Resp. 3 (agreeing "that the Court of Federal Claims and the Federal

Circuit generally focus on whether claims are based on the same operative facts and seek essentially the same relief when determining whether those claims are the same claim for various purposes, including for application of the election doctrine").

The court observes, however, that the parties' application of this test differs. Plaintiff's briefing compares the government's claim with plaintiff's certified claim. Pl.'s Br. 3–11; see also Pl.'s Resp. 7 (arguing that the "test is whether the Government's claim that was appealed to the Board is the same as Palafox's certified claim that has been appealed to this Court"). Contrastingly, defendant compares the substance of plaintiff's appeal before the Board with the substance of plaintiff's certified claim. See Def.'s Br. 10 (contending that "Palafox's certified claim and present complaint involve the same operative facts and seek essentially the same relief as Palafox's appeal to the board"). The court agrees with plaintiff that defendant's focus on what plaintiff pleaded before the Board misses the mark because an election doctrine analysis does not turn on the verbiage of the pleadings before either the Board or the court. See Pl.'s Resp. 7–9. Instead, as the court observed in Bowers, "the election doctrine focuses on the claim . . . presented to the contracting officer."[3] Bowers, 104 Fed. Cl. at 257 (emphasis added). Thus, the appropriate inquiry here is whether the government's claim (as embodied by the April 2012 final decision) is separate and distinct from plaintiff's certified claim. The court turns to this analysis now.

The substantive portion of the April 2012 final decision on the government's claim provides in relevant part:

> GSA is in receipt of your letter dated February 7, 2012 regarding your disagreement with GSA's position on repayment by Palafox of a shortfall in real estate taxes paid to Escambia County, Florida for the subject property. To summarize, you are challenging GSA's independent analysis that . . . the actual real estate taxes . . . paid for each year of the lease since full assessment of 1999 has been less than the[] actual tax obligation of ownership. GSA's summary is that this has created an excess obligation due the government in the amount of $824,416.01.

> The lease . . . states "the base year real estate taxes for the purpose of adjustments are hereby established at $250,000." The "Tax Adjustment" clause . . . states in part: "The Government shall make an annual lump sum adjustment, as additional payment to or deduction from, its share of any increase or decrease in real estate taxes that are assessed over the agreed upon

---

[3]     Defendant's focus on the content of plaintiff's pleading before the Board is relevant, however, to a claim preclusion analysis, see Bowers, 104 Fed. Cl. at 257, a matter that the court has resolved already in plaintiff's favor, see Palafox St. Assocs., L.P. v. United States (Palafox I), 114 Fed. Cl. 773, 790 (2014).

base year or negotiation dollar amount."  The audit clearly shows that the taxes were consistently below the base amount of $250,000. . . .

Because the amount of taxes paid were consistently less than what is negotiated and executed in the lease, the government has been entitled to a reimbursement for the difference in what was paid and what is provided as part of annual and monthly rent.  Since 1999, that has never occurred. Therefore, the excess obligation due GSA is confirmed as $824,416.01.

Def.'s App'x A9.

The court agrees with plaintiff that the sole legal issue implicated in the government's claim was whether, pursuant to the Tax Adjustment clause, Palafox owed GSA an excess obligation of $824,416.01.  Pl.'s Br. 6; see also Pl.'s Resp. 5.  The court further agrees with plaintiff that four operative facts are implicated by this claim:

1.  The contractual base year real estate tax amount was $250,000 for purposes of adjustments.
2.  The Tax Adjustment Clause provided in part:  "The Government shall make an annual lump sum adjustment, as additional payment to or deduction from, its share of any increase or decrease in real estate taxes that are assessed over the agreed upon base year or negotiation dollar amount."
3.  Actual taxes were consistently below the base year amount of $250,000.
4.  The cumulative difference between the annual actual taxes and the base year amount totals $824,416.01.

Pl.'s Br. 7.  Based upon a review of these operative facts, the contracting officer granted the government's requested relief.  See Def.'s App'x A9 ("[T]he excess obligation due GSA is confirmed as $824,416.01.").

Palafox's certified claim sought $831,858.00, was twenty-three pages in length, and consisted of the following seven claims:  (1) GSA breached its obligation under the Tax Adjustment clause by failing to pay Palafox the baseline of $250,000 per year for real estate taxes (Tax Adjustment clause claim); (2) GSA's contemporaneous course of performance supports plaintiff's interpretation of the Tax Adjustment clause (course of performance claim); (3) GSA was estopped from collecting on the excess obligation (estoppel claim); (4) GSA waived its right to collect the excess obligation (waiver claim); (5) GSA's excess obligation claim was barred by laches (laches claim); (6) GSA's excess obligation claim was barred by the CDA's statute of limitations (statute of limitations claim); and (7) GSA's withholding of rent to collect on the excess obligation was premature and not permitted by the lease (premature and improper setoff claim).  Def.'s

App'x A54–80; see also Pl.'s Br. 7–8 (summarizing these claims).[4]  The contracting officer denied all of Palafox's claims in the December 2012 final decision.  See Def.'s App'x A81–83.  It is plaintiff's appeal of this decision, as asserted in Count 5 of the complaint, that is the subject of the instant dispute.  See Compl. ¶¶ 53–57 (Count 5).[5]

Plaintiff characterizes most of its certified claim as "separate and distinct challenges to the Government's set offs to collect the debt."  Pl.'s Resp. 3; cf. Def.'s Br. 2 (observing that in addition to "disput[ing] the contracting officer's interpretation of the tax-adjustment clause," Palafox's certified claim "made additional legal arguments that GSA was barred from collecting the $824,416.01").  In plaintiff's view, there is an "essential distinction between the Government's claim to assess the amount owed and Palafox's certified claim to recover amounts wrongfully set off," Pl.'s Resp. 2–3, and observes that the contracting officer's "April 2012 Final Decision on the Government's claim does not mention setoff [or] any other current or potential collection efforts," id. at 4.  Plaintiff contends that these claims "involve[] many . . . legal issues and, necessarily, many additional facts required to resolve those issues."  Id. at 5.  Plaintiff further argues that whereas the relief sought by the government's claim was "a determination that Palafox was overpaid under the Tax Adjustment clause" in the amount of $824,416.01, the relief sought in Palafox's certified claim was "for the return of $831,858.00 in setoffs wrongfully taken by the Government."  Id. at 4.

Defendant counters that plaintiff's claims "are merely different legal arguments for why the Government should not have been able to recover the $824,416.01."  Def.'s Resp.  7–8.  As defendant correctly avers, "[t]he use of new legal theories to connect the same facts to the same relief does not create new, distinct claims."  Def.'s Br. 12.  To

---

[4]     Plaintiff argues that its certified claim was "actually a collection of discrete claims" and that, "[t]herefore, even if a portion of the certified claim were to be deemed the same as the Government's claim, the remainder still would not be barred by the election doctrine."  Pl.'s Resp. 5 n.6; see also Pl.'s Br. 8 n.3 (contending that its certified claim "is more accurately a collection of individual claims, each with its own operative facts").

[5]     The complaint also asserts independent counts that mirror some of the claims raised in plaintiff's certified claim.  See Compl. ¶¶ 32–36 (Count 1) (corresponding to plaintiff's premature and improper setoff claim); id. ¶¶ 37–41 (Count 2) (same); id. ¶¶ 58–63 (Count 6) (corresponding to plaintiff's statute of limitations claim); id. ¶¶ 64–69 (Count 7) (corresponding to plaintiff's laches claim); id. ¶¶ 70–76 (Count 8) (corresponding to plaintiff's estoppel claim).  Although plaintiff does not raise an independent waiver claim in its complaint, plaintiff raised such a claim in its certified claim, which was subject to the final decision that plaintiff now appeals.  Accordingly, the court finds that the waiver claim is incorporated into Count 5 of plaintiff's complaint and considers it accordingly.

determine whether claims are the same or are separate and distinct, "this court must examine the operative facts and relief sought . . . , not the legal labels placed on those claims." KBR, 115 Fed. Cl. at 54; see K-Con Bldg. Sys., 778 F.3d at 1006 ("[M]erely adding factual details or legal argumentation does not create a different claim, but presenting a materially different factual or legal theory (e.g., breach of contract for not constructing a building on time versus breach of contract for constructing with the wrong materials) does create a different claim."); Scott Timber, 333 F.3d at 1366 ("Scott may have posed slightly different legal theories for the breach, but Scott's claim is essentially the same as presented to the [contracting officer]."); ThermoCor, Inc. v. United States, 35 Fed. Cl. 480, 489–90 (1996) ("The instant case is not one where plaintiff has raised an entirely new claim. . . . Plaintiff merely 'augments the legal theories underlying its claim. But it does not change the essence of that claim . . . .'" (quoting Cerberonics, Inc. v. United States, 13 Cl. Ct. 415, 419 (1987)).

The court now turns to each of seven claims asserted in plaintiff's certified claim.

a.    Tax Adjustment Clause and Course of Performance Claims

The court first finds that Palafox's Tax Adjustment clause claim is "effectively the same claim" as the government's claim, but made by a different party. See Sharman, 2 F.3d at 1570. Both claims involve the same legal issue—whether the Tax Adjustment clause obligates the government to pay Palafox no less than $250,000 annually regardless of Palafox's actual real estate tax obligation—and, necessarily, the same four operative facts. Pl.'s Br. 7 (identifying the four operative facts). Palafox's briefing on this claim focuses on the plain language of the Tax Adjustment clause, see Def.'s App'x A63–64; see also id. at A64–69 (setting forth additional grounds for plaintiff's interpretation of the Tax Adjustment clause in the event its language is deemed ambiguous), as does the contracting officer's final decision on the claim, see id. at A81 (concluding that "GSA's conduct is consistent with the plain[]meaning of the [T]ax [Adjustment] clause"). Moreover, both claims seek essentially the same relief—a determination as to whether Palafox owes GSA $824,416.01. See Pl.'s Resp. 4 (appearing to concede that the relief sought in its Tax Adjustment clause claim "overlaps with the relief sought in the Government's claim"). Because the court concludes that the government's claim and Palafox's Tax Adjustment clause claim are the same claim, "there is but one claim and one decision" on that claim—the April 2012 final decision. See Glenn v. United States, 858 F.2d 1577, 1580 (Fed. Cir. 1988). Accordingly, the election doctrine bars the court from hearing plaintiff's appeal of the contracting officer's December 2012 final decision denying this claim.

Because the court is barred from reviewing the contracting officer's interpretation of the Tax Adjustment clause, the court is also effectively barred from hearing plaintiff's course of performance claim. See Def.'s App'x A69–72 (arguing that "GSA's conduct during performance of the lease evidences the Tax Adjustment Provision's true meaning

15

and precludes GSA from arguing that it is susceptible to another meaning" (some capitalization omitted)). Similarly, the court is also barred from considering plaintiff's instant request for a declaration as to the meaning of the Tax Adjustment clause. See Compl. ¶¶ 77–81 (Count 9) (stating that "[a] declaration of Palafox's and GSA's respective rights and duties concerning the adjustment of payments for real estate taxes under the Lease will terminate the controversy"); id. at 12 (Prayer for Relief) (asking "[t]hat the Court enter judgment declaring that the Lease requires the GSA to pay Palafox no less than the $250,000 baseline for real estate taxes each year").

b.      Estoppel, Waiver, Laches, and Statute of Limitations Claims

The court now turns to plaintiff's claims that GSA was barred from collecting the $824,416.01 based on the principles of estoppel, waiver, and laches and by the CDA's six-year statute of limitations. Plaintiff contends that the following "legal and factual issues" are implicated in these claims:

- The Government's course of conduct over the fourteen years prior to the dispute;[6]
- What real estate tax information was exchanged between the parties and when;
- What real estate tax information—if any—was Palafox obligated to provide the Government and when was it supposed to be provided;
- If Palafox was to provide real estate tax information, to whom within the Government should Palafox have been sending the tax information;
- Did the Government actually receive the real estate tax information sent by Palafox, and, if so, who received it;
- Who in the Government knew about the real estate tax information, what did they know, and when did they know it;
- Whether the Government was put on inquiry notice of its setoff claim and, if so, when;
- What, if anything, the Government was obligated to do regarding each year's real estate taxes, and when;
- When did each year's claim for alleged overpayment ripen; [and]
- Whether Palafox was prejudiced by any Government inaction[.]

Pl.'s Br. 8 (footnote added).

Defendant argues that "[t]he legal issues" identified in this "list of 'legal and factual issues' are not 'operative facts,'" Def.'s Resp. 10 (internal citation and emphasis omitted), and that "the laches, estoppel, and statute-of-limitation theories that Palafox

---

6       The government's course of conduct is implicated not only in plaintiff's course of performance claim but also in plaintiff's claims of estoppel and waiver.

asserts here" are "purely defensive legal theories" that arise from the same operative facts as the government's claim, Def.'s Br. 14.  Plaintiff contends that it "does not assert its claims as defenses to the Government's claim that an 'excess obligation' exists . . . , but rather in an affirmative attempt to obtain repayment of the money thereafter improperly set off."  Pl.'s Resp. 12 n.9.

The court agrees that plaintiff's estoppel, waiver, laches, and statute of limitations "claims" are more accurately characterized as affirmative defenses.[7]  See RCFC 8(c)(1) (identifying estoppel, waiver, laches, and statute of limitations as affirmative defenses); Westfed Holdings, Inc. v. United States, 407 F.3d 1352, 1360 (Fed. Cir. 2005) (identifying waiver as an affirmative defense); Santiago v. United States, 107 Fed. Cl. 154, 159 (2012) (identifying statute of limitations as a defense); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 697 (2010) (identifying laches and estoppel as affirmative defenses).  As affirmative defenses, they are "part and parcel" of the government's claim.  Cf. Santa Fe, Inc. v. United States, 13 Cl. Ct. 464, 467 (1987) (finding that a contractor's claim for interest "is part and parcel of that underlying contractual claim and must be decided in that same forum that the party asserting the claim elected to hear the underlying claim").  The court finds that these affirmative defensives cannot be "logically separated" from the government's claim and are thus not "separate and distinct" from the government's claim.  See KBR, 115 Fed. Cl. at 52.  ("[I]t is evident that claims which can be logically separated from other claims are not necessarily the 'same claim.'").

Plaintiff counters that "the prerequisite of obtaining a contracting officer's final decision applies whether the claim is asserted as an affirmative claim or as a defense to a Government action."  Pl.'s Resp. 11.  Plaintiff effectively argues that it "was required to submit its defense to the Government's claim . . . to the Contracting Officer as a 'claim' and obtain a final decision on its so-called 'claim' as a prerequisite to bringing suit in this Court."  Total Eng'g, Inc. v. United States, 120 Fed. Cl. 10, 15 (2015).  In support of this proposition, plaintiff cites Raytheon Co. v. United States, 747 F.3d 1341, 1354 (Fed. Cir. 2014), which, in turn, cites Maropakis, 609 F.3d at 1331.  Pl.'s Resp. 11.  Raytheon provides, in relevant part:

> Under the Contract Disputes Act, obtaining a final decision is a jurisdictional prerequisite to any subsequent action before a Board of Contract Appeals or the trial court.  See, e.g., Sharman Co. v. United States, 2 F.3d 1564, 1568 (Fed. Cir. 1993) ("Under the CDA, a final decision by the contracting officer on a claim, whether asserted by the contractor or the government, is a

---

[7]     The fact that the contracting officer characterized them as "claims" does not persuade the court otherwise.  See Def.'s App'x A82 (December 2012 Final Decision) (denying plaintiff's "estoppel claim," "Statute of Limitations . . . claim," "waiver claim," "laches claim," and "[a]ll other claims asserted by Palafox in its [certified] claim").

'jurisdictional prerequisite' to further legal action thereon."), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (en banc). The purpose of this requirement is "to create opportunities for informal dispute resolution at the contracting officer level and to provide contractors with clear notice as to the government's position regarding contract claims." Applied Cos. v. United States, 144 F.3d 1470, 1478 (Fed. Cir. 1998). This jurisdictional prerequisite applies even when a claim is asserted as a defense. See M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1331 (Fed. Cir. 2010) (holding that a party "seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the [Contract Disputes Act], whether asserting the claim against the government as an affirmative claim or as a defense to a government action").

Raytheon, 747 F.3d at 1354 (emphasis added).

In Maropakis, the contractor attempted to assert a claim of excusable delay as a defense to the government's counterclaim for liquidated damages—that is, that Maropakis was excused from timely performing under the contract because it was entitled to the time extensions it had requested. See 609 F.3d at 1327. The Federal Circuit characterized Maropakis' defense as a "claim for contract modification," id. at 1331, and concluded that because it had not been first submitted to a contracting officer for final decision, the court lacked jurisdiction over the claim, id. at 1332. The holding of Maropakis is explicit: "[W]e hold that a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim or as a defense to a government action." Id. at 1331 (emphasis added); cf. Sikorsky Aircraft Corp. v. United States (Sikorsky), 102 Fed. Cl. 38, 48 n.14 (2011) (observing that a claim for extension of time "is typically considered an equitable adjustment and resolved under doctrines concerning contractual changes").

Unlike the claim at issue in Maropakis, Palafox's "claims" of estoppel, waiver, laches, and statute of limitations do not seek an adjustment of contract terms. Rather, the affirmative defenses of estoppel, waiver, laches, and the statute of limitations "are traditional common law defenses that are independent of the means by which a party seeks equitable adjustment to a government contract." Sikorsky, 102 Fed. Cl. at 48 n.14; see id. at 44 (identifying waiver, laches, and statute of limitations as some of the affirmative defenses at issue in the case); Linc Gov't Servs., 96 Fed. Cl. at 697 (identifying estoppel as an affirmative defense). "Maropakis' holding only extends to . . . defenses that seek contract modification." Sikorsky, 102 Fed. Cl. at 48 n.14; see also Total Eng'g, 120 Fed. Cl. at 15 (stating that Maropakis is inapposite where a contractor does not seek an adjustment of contract terms). Because Palafox's affirmative defenses do not seek contract modification, Maropakis does not serve plaintiff here.

Moreover, in seeking to characterize these affirmative defenses as independent claims, plaintiff effectively "seeks to impose a meaningless duplicative administrative exhaustion requirement not contemplated by the CDA." Total Eng'g, 120 Fed. Cl. at 15. However, "[t]he CDA does not require the contractor to jump through such an extra hoop and refile its defense to a Government claim as a so-called contractor's 'claim' where it is not seeking any separate monetary relief or contract adjustment." Id.

Further to the foregoing, the court concludes that that the election doctrine bars the court from hearing plaintiff's appeal of the contracting officer's final decision denying plaintiff's estoppel, waiver, laches, and statute of limitations "claims." Similarly, the court is also barred from considering Counts 6 through 8 of plaintiff's complaint. See Compl. ¶¶ 58–63 (Count 6) ("GSA's Setoff is Barred by the Statute of Limitation), ¶¶ 64–69 (Count 7) ("GSA's Setoff is Barred by Laches"), ¶¶ 70–76 (Count 8) ("GSA is Estopped from Setting Off").

c.      Premature and Improper Setoff Claim

Lastly, the court addresses plaintiff's premature and improper setoff claim. Palafox's briefing on this claim avers that the lease originally contained a "clause [that] provided for the right of set-off upon the issuance of a [contracting officer's] final decision," but this clause was ultimately deleted, "leaving no set-off rights to GSA under the Lease." Def.'s App'x A61. GSA's right to setoff was therefore limited to the CDA, which, in Palafox's view, requires the government first "to obtain a contracting officer's final decision before taking the setoff." Id. Thus, plaintiff argues, GSA's initiation of the setoffs five months prior to the contracting officer's April 2012 final decision was improper. See id. at A62, A78.

Plaintiff argues here that this claim is "based on completely separate operative facts from the merits of . . . the Government's 'excess obligation' claim." Pl.'s Br. 9; see id. at 8 (identifying "[w]hat the lease contract provided or did not provide regarding Government setoff rights," and "[w]hen the Government took the setoffs in relation to when the Contracting Officer's final decision establishing that there was an overpayment" as operative facts underpinning this claim). Plaintiff further argues:

> Whether or not the Government prematurely took set-offs prior to a Contracting Officer's final decision is completely independent of whether or not the decision that an 'excess obligation' exists was correct. Whether or not the contract allows the government to set off in order to collect an 'excess obligation' also involves facts separate from the merits of the Government's 'excess obligation' claim. The set-off-related claims involve the dates and amounts of the set-offs, the date (but not merits) of the Contracting Officer's decision, and the contract provisions—if any—relevant to the taking of set-

offs. The April 2012 Final Decision did not decide or even mention set-offs or collection in any form. It decided only that there was a debt—not the propriety of any past, present, or impending efforts to collect the debt.

Id. at 9–10.

The court considers plaintiff's argument persuasive, and agrees that "the contracting officer's findings with respect to [one] claim would have little effect on the contracting officer's findings regarding [the other] claim." See Bowers, 104 Fed. Cl. at 256. Plaintiff's certified claim disputing the propriety of GSA's withholding of rent is not merely an augmented legal theory, but, instead, is separate and distinct from the government's claim. See ThermoCor, 35 Fed. Cl. at 490. Accordingly, the court concludes that the election doctrine does not bar the court from hearing this portion of plaintiff's certified claim, which is also asserted in Counts 1 and 2 in the complaint. Cf. Compl. ¶¶ 32–36 (Count 1) ("Breach of Contract – Illegal Setoff"), ¶¶ 37–41 (Count 2) ("Breach of Contract – Setoff before GSA Claim/Final Decision").

The court observes, however, that even if plaintiff ultimately succeeds in establishing that GSA breached the lease by improperly and/or prematurely taking setoffs, plaintiff must still prove damages caused by the breach. Plaintiff alleges that this breach "has damaged Palafox in an amount not less than $831,858.00." Compl. ¶ 36 (Count 1), ¶ 41 (Count 2). However, the contracting officer has concluded that the Tax Adjustment clause of the lease entitles GSA to reimbursement of $824,416.01 "for the difference in what was paid and what is provided as part of annual and monthly rent," Def.'s App'x A9, a determination the court has found it cannot review. Thus, the court understands that the $7,441.99 that GSA withheld in excess of the $824,416.01 debt is the effective amount at issue in this breach of contract claim—an amount already encompassed by Count 3 of the complaint. See Compl. ¶¶ 42–46 (Count 3) ("Breach of Contract – Setoff in Excess of Claimed Debt"); supra note 1 (observing that the parties agree that the court possesses jurisdiction over Count 3).

B.    Consolidation

Having found that the election doctrine bars the court from hearing plaintiff's appeal of much of the contracting officer's December 2012 final decision denying plaintiff's certified claim, the court now turns to plaintiff's request that the court consolidate "the appeal filed by Palafox at the Board of the April 2012 Final Decision with Palafox's appeal to this Court of the December 2012 Final Decision denying Palafox's certified claim" pursuant to 41 U.S.C. § 7107. Pl.'s Cons. Br. 1. Section 7107 of the CDA provides:

If 2 or more actions arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience

of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of the actions in that court or transfer any actions to or among the agency boards involved.

41 U.S.C. § 7107(d) (2012).

Defendant argues that consolidation would be improper for three reasons:  (1) plaintiff does not currently have an action pending before the Board with which the instant action could be consolidated; (2) Section 7107(d) does not authorize "the Court to enlarge the 180-day deadline under CBCA Rule 12(d) and then reinstate the prior [B]oard case in order to create a partner for consolidation"; and (3) Section 7107(d) does not authorize the court to transfer a claim over which it lacks jurisdiction to the Board. Def.'s Resp. 12.

The threshold issue underlying defendant's first argument is whether section 7107(d) requires an action to be pending before both the Board and the court simultaneously.  The statute allows for consolidation (or transfer) of "2 or more actions." 41 U.S.C. § 7107(d).  As this court has previously stated, "[f]or this court to have authority to transfer and consolidate an action pending before an agency board, suits arising from one contract must be pending in this court and concurrently pending before an agency board." Rockwell Automation, Inc. v. United States, 70 Fed. Cl. 114, 126 (2006) (citing 41 U.S.C. § 609(d)[8]); see Sharp Elecs. Corp. v. McHugh, 707 F.3d 1367, 1374 n.2 (Fed. Cir. 2013) (stating that "if multiple suits arising from a contract are pending in the [court] and one or more Boards, the [court] may order their transfer or consolidation" (citing 41 U.S.C. § 7107(d)); Santa Fe, 13 Cl. Ct. at 469, 470 n.4 (finding that an action was "pending before the Board" and concluding that the action should be transferred to the Board pursuant to its "statutory authority under the CDA to consolidate pending claims in the appropriate forum" (citing 41 U.S.C. § 609(d))[9]).  The court finds that both the language of the statute and the case law supports an interpretation that

---

[8]     On January 4, 2011, Congress recodified the CDA and moved its provisions from sections 601 through 613 to sections 7101 through 7109 of Title 41 of the United States Code.  Act of Jan. 4, 2011, Pub. L. No. 111–350, 124 Stat. 3677 (2011). The amendment did not make any substantive changes to the sections of the CDA at issue in this case. Compare 41 U.S.C. § 7107(d) (2012), with 41 U.S.C. § 609(d) (2006).

[9]     The court also addressed "its authority under the Tucker Act to remand appropriate matters to any administrative or executive body with such direction as it may deem proper and just." Santa Fe, Inc. v. United States, 13 Cl. Ct. 464, 470 n.4 (1987) (citing 28 U.S.C. § 1491(a)(2)).  The court's power to remand, however, applies only to cases "within its jurisdiction," 28 U.S.C. § 1491(a)(2), and is therefore inapplicable here.

actions must be simultaneously pending before both the Board and the court in order for the court to exercise its authority under 41 U.S.C. § 7107(d).

Plaintiff argues that there is an action simultaneously "pending before the Board because Palafox filed suit in this Court prior to the Board dismissal's conversion to a dismissal with prejudice."  Pl.'s Cons. Br. 3; see id. at 4 (arguing that "to the extent actions must be 'pending' in both forums at the same time in order for the Court to consolidate the actions, . . . this is not an obstacle").  As discussed in the court's February 2014 decision, the Board dismissed plaintiff's appeal of the April 2012 final decision on October 17, 2012, further to the parties' joint motion to dismiss.  Palafox I, 114 Fed. Cl. at 790.  The parties' joint motion to dismiss was filed "pursuant to CBCA Rule 12(d)," id. at 787 n.8, which provides that the Board may "dismiss the case without prejudice to reinstatement within 180 calendar days after the date of dismissal," CBCA Rule 12(d). Rule 12(d) of the CBCA further provides that "[w]hen a case has been dismissed without prejudice and neither party has timely requested that the case be reinstated, the case shall be deemed to be dismissed with prejudice on the last day such a request could have been made."  Id.  "Because neither party requested that the case be reinstated within 180 days, the CBCA's dismissal without prejudice was converted to a dismissal with prejudice on April 15, 2013 by operation of CBCA Rule 12(d)."  Palafox I, 114 Fed. Cl. at 790.

Plaintiff stresses that it filed its complaint in this court "on April 8, 2013, before the conversion."  Pl.'s Cons. Br. 3.  According to plaintiff, "Palafox's timely appeal to this Court, within the 180-day Board reinstatement period, makes Palafox timely to reinstate the Board appeal and that the Board appeal be deemed still 'pending' for purposes of consolidation."  Id. at 4.  As support for this proposition, plaintiff cites Glenn and Southwest Marine, Inc. v. United States, which found that an action timely filed at the court could be transferred to the appropriate agency board notwithstanding the fact the ninety-day period for appealing to the board had expired.  Pl.'s Cons. Br. 4 n.3; see Glenn, 858 F.2d at 1581 (finding that section 609(d) does not include a 90-day limit); Sw. Marine, 680 F. Supp. 327, 329 (N.D. Cal. 1988) ("Section 609(d) does not require that a suit be filed in court within ninety days in order to be transferable."); cf. 41 U.S.C. § 7104(a) (affording a contractor "90 days from the date of receipt of a contracting officer's [final] decision" to appeal the decision to the Board).  Unlike the case here, however, both Glenn and Southwest Marine contemplated the consolidation of actions that were concurrently pending before the board and the court.  See Glenn, 858 F.2d at 1581 (finding that consolidation of the case with the appeal pending before the board would be convenient for the parties); Sw. Marine, 680 F. Supp. at 330 (discussing the procedural posture of the pending action before the board and finding that transfer of the case to the board would be in the interest of parties).  The court agrees with defendant that these cases "do[] not authorize the court to extend CBCA Rule 12(d)'s 180-day period and reinstate Palafox's dismissed board case."  Def.'s Resp. 15.  Accordingly, the court finds that plaintiff's reliance on Glenn and Southwest Marine is misplaced.

Because plaintiff's appeal was dismissed with prejudice effective April 15, 2013, there is no case concurrently pending before the Board. See Palafox I, 114 Fed. Cl. at 787 (finding that plaintiff "does not have an appeal currently pending before the [Board]"). Moreover, section 7107(d) does not authorize the court to reinstate a dismissed board action in order to create a partner case for transfer or consolidation. Absent a pending action before the Board, there is no action with which the instant action could be consolidated, and the court cannot exercise its authority under section 7107(d).[10]

C.    Notice of Appeal Rights

One additional matter merits the court's attention. Section 7103(e) of the CDA provides that a contracting officer's final decision must "inform the contractor of the contractor's rights as provided in this chapter." 41 U.S.C. § 7103(e). That is, the CDA requires a contracting officer to "provide the contractor sufficient information concerning his rights to make an informed choice as to whether, and in what forum, he will pursue an appeal." Decker & Co. v. West (Decker), 76 F.3d 1573, 1579 (Fed. Cir. 1996). Further to this instruction, the December 2012 final decision advised, in relevant part:

> Pursuant to the Contract Disputes Act of 1978, this decision may be appealed to the Civilian Board of Contract Appeals . . . . If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Board of Contract Appeals within ninety (90) days from the date you receive this decision. . . .

> In lieu of appealing to the Board of Contract Appeals, you may bring an action directly to the U.S. court of Federal Claims[] within twelve months of the date you received this decision.

Def.'s App'x A83; accord 48 C.F.R. 33.211(a)(4)(v) (similar).

The court has found that it lacks jurisdiction to review much of the contracting officer's December 2012 final decision denying Palafox's certified claim. See supra Part III.A.2. As such, the contracting officer misinformed plaintiff as to its right to appeal. See Pl.'s Opp'n 14 n.8, ("The contracting officer's December 20, [2012] final decision stated that Palafox could appeal to this Court in lieu of the board, which would be a misrepresentation if this Court lacks jurisdiction."); see Palafox I, 114 Fed. Cl. at 788 n.9 (finding this issue not yet ripe for resolution). The contracting officer's incorrect advice regarding a contractor's appeal rights, however, does not create jurisdiction where none

---

[10]    In so concluding, the court deems it unnecessary to address defendant's alternative argument that 41 U.S.C. § 7107(d) does not authorize the court to transfer or consolidate a claim over which it lacks jurisdiction. See Def.'s Resp. 15–17.

exists.  See Santa Fe, 13 Cl. Ct. at 467 n.1 ("A contracting officer cannot bestow jurisdiction upon a court where it does not exist.").

And yet the merits of plaintiff's claim could still be addressed by the Board.  Cf. Palafox I, 114 Fed. Cl. at 788 n.10 (observing that a finding by the court that it lacks jurisdiction over plaintiff's appeal of the December 2012 final decision could "yield an unfair result" given the "fact that plaintiff diligently appealed two final decisions . . . to both fora").  As plaintiff observes, "[i]ncorrectly advising a contractor of appeal rights to this Court that the contractor does not have prevents the contracting officer's final decision from obligating the contractor to appeal the decision within the required time, where the contractor relies to its detriment."  Pl.'s Cons. Br. 4 (citing Finney Co. v. United States, No. 91-1141C, 1991 WL 288911, at *1–2 (Cl. Ct. July 19, 1991)); see Decker, 76 F.3d at 1580 ("A contractor . . . must demonstrate that the fact that it was informed of non-existent appeal rights, in addition to being told of its true appeal rights, actually prejudiced its ability to prosecute its timely appeal before the limitation period will be held not to have begun."); Uniglobe Gen. Trading & Contracting Co., v. United States, 115 Fed. Cl. 494, 515 (2014) ("[W]here defects in a contracting officer's decision 'actually prejudiced [the contractor's] ability to prosecute its timely appeal,' such defects render the decision invalid and therefore insufficient to trigger the running of the applicable limitations period." (quoting Decker, 76 F.3d at 1580)).  And it would certainly appear here that plaintiff relied on the contracting officer's incorrect advice to its detriment.  Thus, if plaintiff were now to attempt to appeal the December 2012 final decision to the Board, the court understands that the Board could deem such an appeal as timely.  See Decker, 76 F.3d at 1579 (suggesting that a contractor can "avoid an otherwise proper time bar on the basis of a defect in the notice of appeal rights" if it "demonstrate[s] detrimental reliance on that defect"); cf. 41 U.S.C. § 7104(a) (affording a contractor "90 days from the date of receipt of a contracting officer's [final] decision" to appeal the decision to the Board).  It is beyond dispute that the Board would have had jurisdiction over a timely appeal of the December 2012 final decision.[11]

---

[11]    It bears repeating that the Board's dismissal of plaintiff's appeal of the April 2012 final decision was not converted to a final judgment on the merits until after the contracting officer rendered the final decision on plaintiff's certified claim.  See Palafox I, 114 Fed. Cl. at 790.  Thus, the unique procedural posture of this case would likely render res judicata unavailable as a defense.  See id.

Nor would the election doctrine prevent the Board from considering plaintiff's appeal of the December 2012 final decision, as plaintiff's original choice of forum for the appeal—this court—is largely without jurisdiction to hear the appeal.  See Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988) ("[U]nder the Election Doctrine, it is a contractor's filing of an appeal . . . in a forum with jurisdiction over the proceeding that precludes the contractor . . . from pursuing its claim in the

Finally, the court observes that if plaintiff elects to appeal the December 2012 final decision to the Board, and the Board considers plaintiff's appeal as timely filed, a case would then be "pending" before the Board for the purposes of 41 U.S.C. § 7107(d).[12]  See supra Part III.B.  If those circumstances arise, the court will reconsider plaintiff's request to consolidate its actions.

IV.    Conclusion

Further to the foregoing, and to the court's February 2014 decision, defendant's Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**.  Defendant's motion is **GRANTED** as to Counts 4, 6–9, see supra Part III.A.2.a–b; Palafox I, 114 Fed. Cl. at 782, and **DENIED** as to Counts 1–3, see supra Part III.A.2.c.  Defendant's motion is **GRANTED-IN-PART** and **DENIED-IN-PART** as to Count 5:  the court concludes that it possesses jurisdiction over only that portion of the contracting officer's December 2012 final decision that addressed the propriety of GSA's setoff (premature and improper setoff claim) and the $7,441.99 withheld in excess of the amount allegedly owed to the government.  See supra Part III.A.2.c. The court also holds that, because there is no concurrently pending action before the Board, the court is not authorized to exercise its consolidation authority pursuant to 41 U.S.C. § 7107(d).  See supra Part III.B.

The court will schedule a joint status conference with the parties to discuss how the parties propose to proceed.  The parties should also be prepared to address whether the court should certify this decision (dismissing Counts 6–9 and dismissing-in-part Count 5) and/or the February 2014 decision (dismissing Count 4) for partial final judgment pursuant to Rule 54(b).  See RCFC 54(b) ("When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more but fewer than all of the claims . . . only if the court expressly determines that there is no just reason for delay."); Abbey v. United States, 101 Fed. Cl. 239, 243–44 (2011) (explaining the Rule 54(b) certification process); Petro-Hunt, LLC v. United States, 91 Fed. Cl. 447, 450–51 (2010) (providing detailed analysis of a motion seeking entry of final judgment pursuant to Rule 54(b)).

---

alternate forum."); see also Part III.A.2.c (finding that the court only possesses jurisdiction to hear Counts 1 through 3 as well as plaintiff's appeal of the contracting officer's December 2012 denial of plaintiff's premature and improper setoff claim (Count 5)).

[12]    The court urges the government's cooperation in any attempt by plaintiff to have the merits of its claim heard before the Board.  As the court observed in its February 2014 decision, the government's inconsistent litigation positions in this case has affected plaintiff adversely and unfairly, and "wastes the resources of the plaintiff, the executive branch, and the judiciary."  Palafox I, 114 Fed. Cl. at 785 n.5 (internal quotation marks omitted).

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge